FEDERAL DEPOSIT INSURANCE CORPORATION *v.*
RALPH CARABETTA

FEDERAL DEPOSIT INSURANCE CORPORATION *v.*
SALVATORE P. CARABETTA

FEDERAL DEPOSIT INSURANCE CORPORATION *v.*
EVELYN M. CARABETTA

FEDERAL DEPOSIT INSURANCE CORPORATION *v.*
SALVATORE R. CARABETTA
(AC 17871)

Foti, Landau and Dupont, Js.

Argued April 28—officially released October 19, 1999

*Kerry M. Wisser*, with whom, on the brief, was *Nathan A. Schatz*, for the appellants (defendants).

*James W. Oliver*, with whom was *Maria K. Tougas*, for the appellee (plaintiff).

*Opinion*

LANDAU, J. This is a joint appeal from four judgments of the trial court rendered after a hearing in damages awarding damages to the plaintiff Federal Deposit Insurance Corporation (FDIC) as receiver of Whitney Bank and Trust Company (Whitney), against the four individual defendants.[1] On appeal, the defendants raise evidentiary challenges, within the parameters of General Statutes § 52-180,[2] maintaining that the trial court

---

[1] The defendants, against whom the plaintiff brought separate actions, are Ralph Carabetta, Salvatore P. Carabetta, Evelyn M. Carabetta and Salvatore R. Carabetta.

[2] General Statutes § 52-180 provides in relevant part: "(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter.

"(b) The writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction,

improperly admitted testimonial and documentary evidence to establish the amount of their debts. We affirm the judgments of the trial court.

The following facts and procedural history are relevant to this appeal. In 1990, each of the defendants executed separate individual promissory notes (notes) in favor of Whitney and later defaulted on the notes. On April 12, 1991, Whitney was declared insolvent and was taken into receivership by the FDIC. In July, 1995, the FDIC commenced actions against each of the defendants. Although each defendant filed a disclosure of defense and a revised answer and special defense, none of the defendants pleaded payment. The trial court granted the FDIC's motions for summary judgment as to liability against each defendant and held a consolidated hearing in damages. Throughout the hearing in damages, the defendants objected to the documentary and testimonial evidence offered by the FDIC to establish the amount of their debts because it was not authenticated as a Whitney business record pursuant to § 52-180. The court awarded the FDIC damages and the defendants appealed.

On appeal, the defendants claim that the trial court improperly admitted into evidence (1) exhibits three and four, computer diskettes containing information downloaded from Whitney's computer system, (2) exhibit six, a document created by a witness from the information contained in exhibits three and four, because it contained hearsay, (3) exhibit nine for lack

occurrence or event recorded or (2) the party's failure to show that such persons are unavailable as witnesses. Either of such facts and all other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of the evidence, but not to affect its admissibility. . . .

"(d) The term 'business' shall include business, profession, occupation and calling of every kind."

of authentication and (4) exhibit twelve because it was an FDIC record based on information obtained from Whitney records. Additional facts will be discussed where relevant to the defendants' claims.

"It is a well established principle of law that the trial court may exercise its discretion with regard to evidentiary rulings, and the trial court's rulings will not be disturbed on appellate review absent abuse of that discretion. . . . Sound discretion, by definition, means a discretion that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law . . . . And [it] requires a knowledge and understanding of the material circumstances surrounding the matter . . . . In our review of these discretionary determinations, we make every reasonable presumption in favor of upholding the trial court's ruling." (Citations omitted; internal quotation marks omitted.) *New London Federal Savings Bank* v. *Tucciarone*, 48 Conn. App. 89, 92, 709 A.2d 14 (1998). "[Our Supreme Court has] often stated that before a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . When determining that issue in a civil case, the standard to be used is whether the erroneous ruling would likely affect the result." (Internal quotation marks omitted.) *Poulos* v. *Pfizer, Inc.*, 244 Conn. 598, 614, 711 A.2d 688 (1998).

I

The defendants first claim that the trial court improperly admitted exhibits three and four, which are computer diskettes containing information downloaded from Whitney's computer system. We disagree.

The defendants' claim fails because they do not distinguish between the diskettes themselves and the information contained on them. A diskette is only a means

of storing information. See *Apple Computer, Inc.* v. *Franklin Computer Corp.*, 714 F.2d 1240, 1243 (3d Cir. 1983), cert. dismissed, 464 U.S. 1033, 104 S. Ct. 680, 79 L. Ed. 2d 158 (1984). It is not until the information on the diskettes is put before the trier of fact that it becomes necessary to authenticate the information as a business record. Because the diskettes are inanimate objects and convey no information to the trier of fact as such, they may be admitted as real evidence if they are material and relevant to the issue being tried.

In this case, Gwen Femmer, a former vice president and supervisor of operations at Whitney, testified that she personally downloaded information from the Whitney computer system onto exhibits three and four at the request of the FDIC on April 13, 1991, the day after Whitney went into receivership. Femmer tested the data on the diskettes for accuracy and kept them in her exclusive possession until shortly before she testified at trial. She also testified as to the reliability of Whitney's computer system. "An item offered as real evidence must be positively identified as the actual item in question. This can be done by establishing unique or distinguishable configurations, marks, or other characteristics, or by satisfactory proof of the item's chain of custody from the time of the incident to the time of trial." C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 9.1.2, pp. 270–71. Through Femmer's testimony, the FDIC laid the proper foundation necessary for the admission of the diskettes as exhibits three and four, and the court properly admitted them into evidence.

Because the defendants claim that the trial court improperly admitted into evidence exhibit six, a document, because it was created from information contained on exhibits three and four; see part II of this opinion; we must take the further step of determining whether the information contained on exhibits three

and four was properly admitted into evidence. At trial, the defendants objected to exhibits three and four, claiming that there was no way for them to determine what information was contained on the diskettes or to cross-examine Femmer about the information. The court admitted exhibits three and four and permitted the information contained on them to come into evidence if the FDIC provided the defendants with a computer to visualize the information on the diskettes. The FDIC provided the defendants with a computer to visualize the data during cross-examination, but the defendants declined to use the computer.

A review of the business records exception to the hearsay rule indicates that the information on exhibits three and four was properly admitted in evidence. "Early Connecticut case law enunciated rules favoring the admissibility of business records. . . . [A] shop book was admissible to prove the amount of indebtedness. . . . Such entries were admissible in proceedings involving parties other than the original debtor and creditor. . . . More recent Connecticut case law has articulated similarly modest requirements for the admission of business records under § 52-180." (Citations omitted.) *New England Savings Bank* v. *Bedford Realty Corp.*, 246 Conn. 594, 602, 717 A.2d 713 (1998).

"To be admissible under the business record exception to the hearsay rule, a trial court judge must find that the record satisfies each of the three conditions set forth in General Statutes § 52-180. The court must determine, before concluding that it is admissible, that the record was made in the regular course of business, that it was the regular course of such business to make such a record, and that it was made at the time of the act described in the report, or within a reasonable time thereafter." (Internal quotation marks omitted.) *Bell Food Services, Inc.* v. *Sherbacow*, 217 Conn. 476, 485, 586 A.2d 1157 (1991).

"Conformity with the statutory conditions which permit the admission of business records is deemed to provide reasonable indicia of reliability. . . . Even when properly admitted, [however,] such records carry no presumption of accuracy, their credibility remaining a question for the trier of fact. . . . While the circumstances of the making of the [records] may be shown to affect the weight of that evidence . . . there is no requirement that the accuracy of a business record be proved as a prerequisite to its admission." (Citations omitted; internal quotation marks omitted.) *State* v. *Waterman*, 7 Conn. App. 326, 341–42, 509 A.2d 518, cert. denied, 200 Conn. 807, 512 A.2d 231 (1986).

"We have stated that § 52-180 'should be liberally interpreted' in favor of admissibility. *Bell Food Services, Inc.* v. *Sherbacow,* supra, 217 Conn. 485; see *Emhart Industries, Inc.* v. *Amalgamated Local Union 376, U.A.W.,* 190 Conn. 371, 388, 461 A.2d 422 (1983). The witness introducing the document need not have made the entry himself or herself, nor have been employed by the organization during the relevant time period. *Baumert-Moran Sales Co.* v. *Red Bird Truck Rental Corp.,* 149 Conn. 42, 45, 175 A.2d 189 (1961)." *New England Savings Bank* v. *Bedford Realty Corp.,* supra, 246 Conn. 603. Also, "[t]here is no requirement in § 52-180 . . . that the documents must be prepared by the organization itself to be admissible as that organization's business records. All that is required is that it be in the regular course of the business to make the writing or record." (Internal quotation marks omitted.) *Crest Plumbing & Heating Co.* v. *DiLoreto,* 12 Conn. App. 468, 475–76, 531 A.2d 177 (1987).

The liberal application of the statute is derived from the recognition that the trustworthiness of such documents comes from their being used for business purposes and not for litigation. *Emhart Industries, Inc.* v. *Amalgamated Local Union 376, U.A.W.,* supra, 190

Conn. 388–89. Thus, the fact that the business relies on such records tends to establish their trustworthiness. *New England Savings Bank* v. *Bedford Realty Corp.*, supra, 246 Conn. 600.

In this day and age, evidence is not inadmissible because the business record is created, stored or produced by means of computer technology. In *American Oil Co.* v. *Valenti*, 179 Conn. 349, 360–61, 426 A.2d 305 (1979), our Supreme Court determined that one who used computer records and had only an indirect role in their production was competent to testify that the records were made in the ordinary course of business. The witness' personal knowledge goes to the weight of the evidence, not to its admissibility. Id., 357–58.

When computer records are offered as evidence, the proponent must satisfy a two part test. In addition to meeting the three requirements of the business records exception to the hearsay rule; see *Bell Food Services, Inc.* v. *Sherbacow*, supra, 217 Conn. 485; the proponent also must establish that the basic elements of the computer system are reliable. "Trial courts must have considerable latitude in determining the admissibility of evidence in [the area of computer generated business records] as in others. *Doran* v. *Wolk*, 170 Conn. 226, 232, 365 A.2d 1190 (1976). We are not prepared to identify with precision what status in a particular company's hierarchy a witness must have in order to be sufficiently knowledgeable to testify about computer records. Section 52-180 expressly allows business records to be admitted despite the absence of testimony from 'the person or persons who made the writing or record, or who [had] personal knowledge of the act, transaction, occurrence or event recorded.' This language is helpful in clarifying that it is not necessary to produce as a witness the [data entry clerk] who actually entered information into the computer or the programmer who designed the processing program." *American Oil Co.*

v. *Valenti*, supra, 179 Conn. 360. What is crucial is not the witness' job description, but rather her knowledge of the basic elements that afford reliability and trustworthiness to computer generated data. See id., 361; *SKW Real Estate Ltd. Partnership* v. *Gallicchio*, 49 Conn. App. 563, 576–77, 716 A.2d 903, cert. denied, 247 Conn. 926, 719 A.2d 1169 (1998).

Here, Femmer's testimony contained all the elements of trustworthiness required by § 52-180 and the requirements of *American Oil Co.* She testified that exhibits three and four contained information on the defendants' notes as of the date Whitney failed, that it was Whitney's regular course of business to keep records on loans, that Whitney kept records of the defendants' notes in the regular course of business and that the records were made contemporaneously with the events concerning the defendants' notes. Furthermore, Femmer testified that it was in the regular course of Whitney's business to download loan information from the computer system onto diskettes at least monthly and that she was responsible for downloading the information. She supervised the data processing department at Whitney, was familiar with the hardware and software used by Whitney, had access to all the information in the computer system and found the system to be generally reliable. She also received computer training and was responsible for daily testing and balancing. Therefore, the trial court properly admitted the information contained on exhibits three and four.[3]

II

The defendants' second claim is that the trial court improperly admitted exhibit six, a document created

[3] We note that the defendants declined to make use of the computer provided by the FDIC to visualize exhibits three and four on cross-examination. Because the exhibits were admissible, it was incumbent upon the defendants to attack the credibility of the information contained on them through cross-examination if they wanted to challenge the weight the trial court ascribed to the data.

from information contained on exhibits three and four, because it was based on hearsay, because it was not created as a business record but for litigation and because the FDIC improperly failed to provide the defendants with the information underlying exhibit six. We do not agree.

The following facts are necessary for our resolution of this claim. Prior to its failure, Whitney had a contractual arrangement with NCR Corporation (NCR), based in Virginia, under which NCR was to provide data processing services and storage for Whitney. In Femmer's opinion, the data processing performed by NCR was generally reliable. Femmer downloaded exhibits three and four from computer records maintained by NCR. Exhibit six is an accrual loan download report created during trial from data contained on exhibits three and four. It is not a printout of exhibits three and four and no screen of information on either diskette would look like exhibit six. The diskettes contain eighty fields of information on each loan. Femmer testified that none of the data on exhibits three and four was changed in creating exhibit six; the data were put in a different format to make it easier to read.[4]

---

[4] The court questioned Femmer as follows:

"The Court: Well, let me ask you, is that not—like I say, unfortunately, I probably am not enough of an expert, I am not an expert in computers, but I do use them and I do have some knowledge of them. When I have something on the screen in front of me and I want to put it onto a piece of paper, I press a button called print. You cannot do that with these exhibits and get what's on the screen?

"[Femmer]: You can do that. We do have that.

"The Court: But you just didn't do that?

"[Femmer]: We didn't just do that because it's very difficult to read.

"The Court: What do you mean by difficult?

"[Femmer]: It just flows together.

"The Court: You can't understand it, you mean? Or you can't see it, or what?

"[Femmer]: It's much harder to differentiate between the fields.

"The Court: Okay, but it can be done?

"[Femmer]: It can be done and I did print off copies.

"The Court: And is this just an aid to the reader? Is that what you're saying?

"[Femmer]: Yes, this was just an aid to make it easier to read.

The defendants claim that because exhibits three, four and six were not properly authenticated, the trial court improperly admitted exhibit six. "Authentication is . . . a necessary preliminary to the introduction of most writings in evidence . . . . A proponent may authenticate a document by demonstrating proof of authorship of, or other connection with, [such] writings. . . . In general, a writing may be authenticated by a number of methods, including direct testimony, circumstantial evidence or proof of custody. . . . The requirements for authenticating a business record are identical to those for laying a foundation for its admissibility under the hearsay exception. It is generally held that business records may be authenticated by the testimony of one familiar with the books of the concern, such as a custodian or supervisor, who has not made the record or seen it made, that the offered writing is actually part of the records of the business." (Citations omitted; internal quotation marks omitted.) *New England Savings Bank* v. *Bedford Realty Corp.*, supra, 246 Conn. 604.

As we stated in part I of this opinion, Femmer's testimony established the basis for admitting the information on exhibits three and four as Whitney's business

"The Court: But you didn't—I don't want to put words in your mouth. Did you put anything into this other than making it easier to read? When I say read, I'm talking about easier to the eye or did you do some editorializing of it?

"[Femmer]: No, we didn't change any of the information on the diskette. All of the original data is still there.

"The Court: You're saying it is the same except it's a little different format. Is that what you're saying?

"[Femmer]: Yes, yes.

"The Court: Format. She said it's the same information only it's a different—to the eye it looks different but it's the same. She didn't—she said—correct me if I'm saying anything—

"[Femmer]: No, it's the same information.

"The Court: She didn't change a number. She didn't change a word. She just made it easier for the eye to see. That's what I got from the witness' testimony. She didn't summarize anything."

records under the business records exception to the hearsay rule as well as the basis for establishing the reliability of the computer system that produced those records. The information on exhibits three and four was, therefore, properly admitted under the business records exception to the hearsay rule. See General Statutes § 52-180.

"The trustworthiness of a business record devolves from its being prepared 'in the ordinary course of business,' but litigation is common enough for most firms so that they must keep or prepare records in connection with present or future litigation. Although such records should be reviewed with particular care for indicia of trustworthiness, they should not be excluded solely for the reason of their nexus to litigation. Cf. *State* v. *Jeffrey*, 220 Conn. 698, 710, 601 A.2d 993 [(1991), cert. denied, 505 U.S. 1224, 112 S. Ct. 3041, 120 L. Ed. 2d 909 (1992)]." C. Tait & J. LaPlante, Connecticut Evidence (Sup. 1999) § 11.14.3, p. 239. The fact is that the defendants defaulted on their promise to pay Whitney. It was in the ordinary course of the FDIC's business, as receiver of the bank, to collect on the notes and it had to resort to litigation to do so. To prove its case, the FDIC had to produce evidence of the state of the notes at the time it took over Whitney. The fact that exhibit six was prepared at the time of and for this litigation was not reason to exclude it from evidence. The court properly admitted exhibit six.

Finally, the defendants claim that exhibit six was a summary and that the trial court should not have admitted it into evidence because the FDIC failed to provide them with the data underlying exhibit six as required by *Elmira Roofing Co.* v. *Gould*, 71 Conn. 629, 631–32, 42 A. 1002 (1899). The defendants' argument is disingenuous. A review of the transcript reveals that the defendants objected to the admission of the information contained on exhibits three and four if they were not

provided with a means of visualizing the information. The court admitted the information on the diskettes on the condition that the FDIC provide the court and the defendants with a computer to visualize the information. The FDIC provided a computer so that the defendants could visualize the information contained on the diskettes, but the defendants failed to make use of the computer to cross-examine Femmer. Because the defendants waived their right to cross-examine Femmer, the court properly admitted the information on exhibits three and four. For these reasons, the court properly exercised its discretion in admitting exhibit six.

### III

The defendants' third claim is that the trial court improperly admitted exhibit nine because it was not authenticated. We are not persuaded.

Exhibit nine is the customer master report for the defendants' notes. Exhibit nine is dated April 15, 1991, and is a snapshot of each loan, including its account and payment history, outstanding principal balance, accumulated interest, "paid to" date and the per diem rate as of April 12, 1991, the date Whitney was placed into receivership. William Lewis, the customer services manager of NCR in charge of overseeing the services NCR provided to its bank customers, testified from personal knowledge of the contractual obligation NCR had to Whitney, that he was familiar with the NCR computer system, that he found it to be reliable generally and that it was working on or about April 15, 1991.

Mike Zitt was a loan support supervisor at NCR at the time Whitney went into receivership. Zitt received correspondence from the FDIC on April 15, 1991, asking him to send the customer master reports to the former site of Whitney. The reports were delivered to his office and he personally boxed and sent them to the FDIC. Zitt

was familiar with the NCR software and had personal knowledge that the computer was generally reliable and working on April 15, 1991. Zitt identified the NCR bank number assigned to the Whitney customer master reports. The format of the customer master reports was unique to NCR software. He recognized each report because of the weight, color and NCR writing on the side of the computer paper, as well as the unique fields and format.

The defendants claim that exhibit nine was not properly authenticated because neither Lewis nor Zitt could testify that the information on the printout was the same information that appeared on a computer screen on the date in question. Our law does not require such verification for business records to be admitted into evidence. The evidence shows that NCR had a business relationship with Whitney requiring it to provide data processing services. Lewis and Zitt were familiar with NCR's computer system and its reliability. They testified about the services NCR performed for Whitney and that the customer master reports were generated from Whitney records at the request of the FDIC. Zitt identified the printout at trial as having all of the indicia that they were Whitney records produced by NCR. The witness who authenticates a business record need not have prepared the report. The witness need only testify as to his familiarity with the computer system and its reliability, that the record was produced in the regular course of business and that it was the regular course of business to produce the records for the document to be admitted properly.

IV

The defendants claim finally that the trial court improperly admitted exhibit twelve because it was an FDIC record based on information obtained from Whitney. We disagree.

Exhibit twelve was produced as evidence of the amount of debt owed by the defendants according to the FDIC's computer system. The defendants objected to exhibit twelve, claiming that the information is hearsay from Whitney. Teresa Thurston, a technician in the accounting department of the FDIC, testified that she was familiar with the FDIC computer system, including the "LAMIS System." She had received computer training, had the ability to access all computer screens and found the FDIC computer system to be reliable generally.

Thurston testified that exhibit twelve consisted of computer printouts of the following screens: "POFF," payoff screen, which contained the principal balance and accrued interest on each note; "LGEN," loan general history screen, which contained a per diem, current interest rate and "paid to" date; and "HRAP," history recap screen, which contained interest rate change information. Thurston personally retrieved each screen and printed them out. She hand calculated the accumulated interest forward from the paid-to date to confirm that the data from the customer master reports had been incorporated correctly into the FDIC's LAMIS System.

To verify the accuracy of the interest rates that the FDIC applied to the defendants' notes, the FDIC offered the testimony of Maureen Dutile, a credit technician with the FDIC whose duty was to monitor interest rate changes. She personally compared the dates of the interest rate changes as well as the rate change contained in the FDIC computer records with the interest rates published in the Wall Street Journal to assure accuracy.

The foundation presented by the FDIC with respect to exhibit twelve comports with the standards enunciated in *Bell Food Services, Inc.* v. *Sherbacow,* supra, 217 Conn. 485. The defendants objected because Thurston

could not verify the accuracy of the information the FDIC obtained from Whitney. She was not required to do so. The defendants overlook the fact that authentication goes to the admissibility of exhibit twelve, not to its accuracy, which goes to its weight. "Conformity with the statutory conditions which permit the admission of business records is deemed to provide reasonable indicia of reliability. . . . Even when properly admitted, [however,] such records carry no presumption of accuracy, their credibility remaining a question for the trier of fact. . . . While the circumstances of the making of the [records] may be shown to affect the weight of that evidence . . . there is no requirement that the accuracy of a business record be proved as a prerequisite to its admission." (Citations omitted; internal quotation marks omitted.) *State* v. *Waterman*, supra, 7 Conn. App. 341–42. The trial court, therefore, properly admitted exhibit twelve.

The judgments are affirmed.

In this opinion the other judges concurred.