ALLSTATE INSURANCE COMPANY *v.* CHRISTINE A. BERUBE ET AL.
(AC 24057)

Lavery, C. J., and Bishop and West, Js.

Argued April 20—officially released August 17, 2004

*Chistopher M. Vossler*, with whom, on the brief, were *Philip T. Newbury, Jr.*, and *Alexandria L. Voccio*, for the appellant (plaintiff).

*Richard Bruno*, for the appellee (named defendant).

BISHOP, J. On March 5, 1999, Matthew Berube got into bed with his then wife, the defendant Christine Berube,[1] and their two month old daughter with a sawed-off .22 caliber rifle. Shortly, thereafter the weapon discharged causing injuries to the defendant. Subsequently, the defendant brought an action against Matthew Berube seeking to recover damages. Matthew Berube sought to have the plaintiff, Allstate Insurance Company, defend and indemnify him under a homeowners insurance policy (policy) issued to him and the defendant by the plaintiff. On February 28, 2002, the plaintiff brought the present declaratory judgment action, seeking a determination as to its obligations under the policy to defend and to indemnify Matthew Berube in the underlying action. The plaintiff claimed that it was not obligated to defend and to indemnify Matthew Berube because the shooting was not an occurrence for which payment was required and that the shooting was a criminal act for which coverage is excluded by the terms of the policy. Following trial on the declaratory judgment action, the court rendered judgment in favor of the defendant, holding that the shooting was an occurrence under the policy and that her claim was not excluded from coverage as a criminal act because the shooting was an accident. This appeal followed. We reverse the judgment of the trial court and remand the case for further proceedings.

The following relevant facts can be gleaned from written submissions of the parties and the defendant's testimony at trial. On March 5, 1999, the defendant and Matthew Berube were married and living together with their two month old daughter at their home in the Terryville section of Plymouth. On that date, the policy

---

[1] Matthew Berube was defaulted for failure to appear and is not involved in this appeal. We refer in this opinion to Christine Berube as the defendant.

was in effect. At approximately 7 a.m., when Matthew Berube returned home from work, the defendant and their infant daughter were in bed. Unbeknownst to the defendant, Matthew Berube entered the bedroom carrying a .22 caliber rifle that he had purchased at some earlier time without the defendant's knowledge. The rifle's barrel and stock had been shortened and its serial numbers had been removed. After Matthew Berube entered the bedroom, he got into bed with the defendant and their daughter, who was lying between them. Matthew Berube then told the defendant to roll over with her back to him. She complied, moving the infant to remain facing her. The defendant next felt great pain in the back of her head as though she had been "hit with a frying pan." When she asked Matthew Berube what he had hit her with, he replied, "Nothing." The defendant began to cry and stated that she felt she might die. In response, Matthew Berube offered her a Tylenol and encouraged her to sit up. At this juncture, the defendant had blurred vision and was immobilized. After twice being urged to do so by the defendant, Matthew Berube called an ambulance. The defendant was transported to a hospital where she was found to have been shot in the back of the head. At the time of the incident, the defendant and Matthew Berube were nurses with training in emergency care. They both knew that the normal emergency medical procedure for a person with a head wound is to keep the person immobile until further medical assistance arrives on the scene.

Before the ambulance arrived at their residence, Matthew Berube admitted to the defendant that he had brought a gun into their bed and that he had accidentally shot her. Subsequently, Matthew Berube was arrested and charged with the crimes of assault in the first degree, reckless endangerment and risk of injury to a child. During the criminal proceedings, he filed a nolo

contendere plea to the charges and received a prison sentence that included a period of incarceration. Also, after the incident, the defendant brought a marital dissolution action during which she testified to her belief that the shooting may not have been an accident. Pursuant to her request, the defendant obtained a pendente lite relief from abuse order against Matthew Berube on the basis of the shooting incident. The defendant subsequently brought the underlying action against Matthew Berube, and he, in turn, sought to have the plaintiff defend and indemnify him under the policy. The plaintiff declined coverage and brought the present declaratory judgment action, seeking a judgment that there is no coverage on the basis that the shooting was not an "occurrence" as defined in the policy and that, even if it could be classified as an "occurrence," coverage is excluded because the defendant's injuries resulted from a "criminal act."

At trial, the policy was admitted as documentary evidence. The policy defines an "occurrence" in relevant part as "an accident . . . resulting in bodily injury . . . ." In its articulation, the court stated that the shooting was accidental and that, because it led to bodily injury, it was a covered occurrence. Having determined that the shooting was an accidental occurrence, the court analyzed whether coverage for the occurrence nevertheless was excluded as an intentional or criminal act as provided for in the relevant exclusion provision in the policy.

In its assessment, the court, while noting that Matthew Berube had been convicted of crimes after pleas of nolo contendere, nevertheless found that his acts were neither intentional nor criminal. The court reasoned that because assault in the first degree requires intentional conduct, risk of injury to a child requires wilful conduct and reckless endangerment requires reckless conduct, Matthew Berube's conduct was not

criminal because it was accidental. The court stated: "Having discharged the firearm accidentally, [Matthew Berube's] conduct was not intentional or wilful. There were no witnesses to the discharge, and therefore there is no evidence that [he] acted recklessly. Consequently, there is no basis for the court to find that Matthew Berube committed a criminal act."

On appeal, the plaintiff claims that the court incorrectly determined that the shooting was a covered occurrence and that it was not a criminal act. Additionally, the plaintiff claims that evidence of Matthew Berube's criminal conviction was sufficient to trigger the policy's criminal acts exclusion.[2]

As a threshold matter, we set forth our standard of review. "[O]ur function [on appeal] is not to examine the record to see if the trier of fact could have reached a contrary conclusion. . . . Rather, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. . . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly

---

[2] Although we need not reach this last issue because we decide the appeal on the basis that there was evidence of recklessness from which the court could have concluded that the shooting was a criminal act, we note that our Supreme Court, in *Groton* v. *United Steelworkers of America*, 254 Conn. 35, 757 A.2d 501 (2000), declined to abandon its rule that a conviction based upon a plea of nolo contendere is not res judicata as to the issue of criminal action. Id., 50–51. We note, as well, that the Supreme Court did not hold that such a conviction has no evidentiary value and, in fact, in *Groton*, the evidence of the conviction based on a nolo plea was apparently sufficient evidence of criminal conduct under the particular circumstances of that case.

erroneous." (Internal quotation marks omitted.) *Hartford Ins. Co.* v. *Colonia Ins. Co.*, 58 Conn. App. 39, 43–44, 750 A.2d 1158, cert. denied, 254 Conn. 907, 755 A.2d 881 (2000).

I

The plaintiff first claims that the court incorrectly determined that the shooting was an occurrence under the terms of the policy. We disagree.

As noted, the policy defines an "occurrence" in relevant part as "an accident . . . resulting in bodily injury . . . ." Our review of the record finds support for the court's conclusion that the shooting was not intentional, and that it was, in fact, an accident. Although there was some evidence regarding Matthew Berube's stealth prior to and immediately after his shooting the defendant from which a trier of fact reasonably could find that he acted wilfully, the court's finding that the shooting was accidental was not clearly erroneous.

II

The plaintiff next claims that the court's finding that Matthew Berube's conduct was not a criminal act was clearly erroneous. We agree.

In our assessment of the court's conclusion that the shooting was not a criminal act, we review first the court's conclusion that "[h]aving discharged the firearm accidentally, Matthew Berube's conduct was not . . . wilful." Although the court correctly determined that a finding of guilt under the risk of injury statute, General Statutes § 53-21, requires proof of wilfulness, the court appears to have conflated the notions of wilfulness and specific intent.

"To convict a defendant of risk of injury to a child, a court must find that the defendant acted wilfully and that he either intended the resulting injury to the victim,

or he knew that the injury would occur, or that his conduct was of such a character that it demonstrated a reckless disregard of the consequences." (Internal quotation marks omitted.) *State* v. *Guitard*, 61 Conn. App. 531, 543, 765 A.2d 30, cert. denied, 255 Conn. 952, 770 A.2d 32 (2001). "Wilful" is defined as "proceeding from a conscious motion of the will; voluntarily; knowingly; deliberate." Black's Law Dictionary (6th Ed. 1990). In this case, there is no question that Matthew Berube voluntarily got into bed with his former wife and daughter with a loaded sawed-off .22 caliber rifle, and, as such, this conduct was indisputably wilful. It appears from the memorandum of decision that the court's conclusion that Matthew Berube's conduct was not wilful and therefore he could not be have committed the crime of risk of injury to a child was based on its finding that Matthew Berube accidentally discharged the weapon. The decision appears to be based on the court's perception that criminal culpability would require proof that the actual discharge of the weapon was wilful. These are incorrect statements of law. Having proved that Matthew Berube acted voluntarily when he got into bed with a loaded weapon, the state need not prove that Berube had the specific intent to discharge the weapon in order to prove his criminal culpability. In an analogous circumstance, we have held that a defendant who, in operating a motor vehicle while intoxicated, created a risk of injury to a minor passenger by his reckless driving resulting in injuries to the child. See *State* v. *Guitard*, supra, 61 Conn. App. 543. Thus, proof of wilful behavior that recklessly exposes a minor to injury may be sufficient to convict a defendant of the crime of risk of injury to a child even if the defendant did not have the specific intent to expose the child to a risk of injury. Accordingly, as the court based its decision on an incorrect statement of law, the decision as to risk of injury to a child cannot stand.[3]

---

[3] Our analysis is limited to a determination that the court applied the wrong legal standard when determining whether the defendant committed

Next, we must examine the court's conclusion that Matthew Berube's conduct did not constitute reckless endangerment as there was "no evidence that he acted recklessly." As correctly noted by the court, a person is guilty of reckless endangerment in the first degree when, "with extreme indifference to human life, he recklessly engages in conduct which creates a risk of serious physical injury to another person." General Statutes § 53a-63. A person is guilty of the lesser included offense of reckless endangerment in the second degree when, "he recklessly engages in conduct which creates a risk of physical injury to another." General Statutes § 53a-64.

In its assessment of the undisputed facts, the court concluded that there was *no evidence* that Matthew Berube acted recklessly. A fair review of the record belies that conclusion. The evidence in the record, if credited by the fact finder, provides a basis for a determination that Matthew Berube acted recklessly. The facts stipulated to by the parties leave no doubt that Matthew Berube brought a loaded weapon into the bed occupied by the defendant and their infant child and that the gun discharged, striking the defendant in the back of her head. The record includes a lengthy statement given by the defendant to the police. In this statement she claimed that immediately after she was shot, Matthew Berube denied that he had done anything to hurt her and, in fact, offered her a Tylenol, a glass of water and encouraged her to sit up. On the basis of her training and experience as a nurse, the defendant stated that all of those suggestions are not appropriate for a person with a head wound. She further stated that Matthew Berube, who also had training in emergency care, would have been equally aware that such measures are not appropriate. Additionally, the defendant

the crime of risk of injury. The determination of whether the defendant's conduct was in fact wilful is left to the court upon remand.

stated that on the day after the incident, she had a conversation with Matthew Berube in which she accused him of being careless to which he responded: "You're right. I didn't have respect for it. I didn't have respect for the gun and I wish, I wish I knew now; and I wish I took a class."

We conclude that the record is not devoid of any evidence that Matthew Berube acted recklessly. As such, the court's determination that the "there is no evidence that Matthew Berube acted recklessly" is clearly erroneous.[4] Because the court's decision is premised on its incorrect determination that the record contained no evidence of recklessness, its decision cannot stand.

The judgment is reversed and the case is remanded for a further proceedings consistent with this opinion.

In this opinion the other judges concurred.

---

[4] In reaching this conclusion, we are mindful of the unique authority of the trial court to find facts. Our analysis is limited to a determination that the record contains evidence from which a fact finder reasonably could find recklessness if that evidence is credited.