GLEN DUPLISSIE *v.* KENNETH M. DEVINO ET AL.
(AC 26588)
(AC 26589)

Schaller, Gruendel and Peters, Js.

674

Argued February 14—officially released July 25, 2006

*Frederick W. Krug*, for the appellants-appellees (defendants).

*Jason M. Lipsky*, for the appellee-appellant (plaintiff).

GRUENDEL, J. These are appeals from the trial court's judgment on claims by the plaintiff, Glen Duplissie, that his former employers, the defendants Kenneth M. Devino and Building Structures, Inc. (Building Structures),[1] breached various agreements regarding unpaid compensation. The court found in favor of the plaintiff in part and in favor of the defendants in part, and awarded the plaintiff damages from each defendant. In their appeals, the parties now challenge the court's judgment (1) in favor of each party, in part, on the plaintiff's claims related to an agreement for Devino's payment of an annual sum to him, (2) in favor of Devino on the plaintiff's claims related to an agreement for Devino to transfer to him an interest in his business and (3) in favor of the plaintiff, in part, on his claims related to an agreement for Building Structures to pay him commissions. We affirm the judgment of the trial court.

The following facts and procedural history, found by the court, are relevant to the claims on appeal. In 1982, the plaintiff began working for Devino's wife as a subcontractor, performing various landscaping and other handyman jobs at their family residence.[2] Over the next several years, the plaintiff transitioned from these responsibilities to performing commercial construction activities for Devino and his business entities. In February, 1986, the plaintiff began working as a construction manager at one of Devino's commercial projects on a

---

[1] Building Structures is one of the various business entities owned by Devino. The plaintiff directs each of his claims separately at a particular defendant. Building Structures and Devino jointly have filed their cross appeal and a brief in response to the plaintiff's appeal. Where appropriate both parties will be referred to collectively as the defendants, or independently by name.

[2] At the time, the plaintiff was operating as an independent contractor under the name of a small business entity known as LGD Enterprises.

trial basis. At first, the plaintiff received base wages of $400 per week, plus additional benefits of paid sick and vacation days and health insurance. After a ninety day trial period, around June, 1986, the plaintiff's base wages were increased to $600 per week. Thereafter, the plaintiff received periodic increases to his base salary.

Throughout the course of the employment relationship, the plaintiff worked for Devino's various business entities, including the Industrial Development Group (Industrial Development)[3] and Building Structures.[4] During this period, the parties also entered into various oral agreements under which the plaintiff would receive additional compensation. These agreements included (1) the payment of $10,000 each July to the plaintiff by Devino in exchange for the plaintiff's foregoing any additional construction work for others, (2) the transfer of a 5 percent interest in Industrial Development to the plaintiff at the time he retired or ended his employment with Devino and (3) the payment of a 10 percent commission to the plaintiff from the profit Building Structures made on projects for which he acted as the construction manager. The employment relationship terminated on August 22, 1997.

In March, 2000, the plaintiff initiated a lawsuit against Devino and Building Structures, alleging that the defendants failed to fulfill their obligations under each of these oral agreements. The matter was tried to the court on December 15 and 16, 2004. On May 6, 2005, the court rendered judgment in favor of the plaintiff in part and in favor of the defendants in part, and awarded the

---

[3] Industrial Development is operated by Devino for the purpose of constructing commercial and industrial buildings on land owned by himself and others through various real estate partnerships. The buildings would then be leased to various tenants.

[4] Building Structures is a business entity created around 1991 and operated by Devino for the purpose of constructing buildings on properties owned by other parties.

plaintiff a total of $152,323.55 in damages.[5] These appeals followed. Additional facts will be set forth as necessary.

I

The first set of claims on appeal relate to the agreement between the plaintiff and Devino for the payment of $10,000 each July.

In its well reasoned memorandum decision, the court found the following facts relevant to this claim. "Prior to beginning full-time employment with . . . Devino, [the plaintiff] owned and operated a small construction business that built custom additions to residential properties and performed other simple carpentry and landscaping services. [The plaintiff] continued to perform this work in his spare time after he became employed full-time by . . . Devino.

"Sometime in June, 1986 . . . Devino learned that [the plaintiff] continued to perform construction work for others. . . . Devino discussed the matter with [the plaintiff] and the parties orally agreed that, in exchange for [the plaintiff] forgoing any additional 'moonlighting' activities . . . Devino would pay [the plaintiff] a lump sum of $10,000 each July while [the plaintiff] remained employed by . . . Devino. The parties agreed that this payment was to be in addition to [the plaintiff's] base salary and other benefits. [The parties] also agreed that the plaintiff would have the option of temporarily forgoing receipt of the yearly $10,000 payment and, instead, allow it to be held by [Industrial Development]. Any funds temporarily retained by Industrial Development were to accrue interest at the compounded rate of 10

---

[5] The court concluded that the plaintiff is entitled to damages from Devino in the amount of $86,416.53, plus prejudgment interest of $33,270.16, for a total of $119,686.69. The court also concluded that the plaintiff is entitled to damages from Building Structures in the amount of $21,862, plus prejudgment interest in the amount of $10,952.86, for a total of $32,636.86.

percent per annum for the benefit of the plaintiff until such time as he elected to exercise his right to receive the funds.

"Pursuant to this agreement . . . Devino paid the plaintiff the lump sum compensation in 1987, 1988 and 1989. In 1990, [Devino] asked the plaintiff, pursuant to their oral agreement, to defer receiving the $10,000 payment for that year because of the declining real estate market. The plaintiff agreed. The parties reaffirmed their prior agreement that the plaintiff would receive interest for any sums that the plaintiff allowed . . . Devino to hold back.

"In 1991 . . . Devino paid the plaintiff $8500 pursuant to their oral agreement. Although this payment was made prior to the July date established by the parties' oral agreement, the court rejects, as a factual matter . . . Devino's claim that these payments were discretionary bonuses that he was not obligated to make. The plaintiff never received the remaining $1500 in lump sum compensation for that year.

"In 1992, [the plaintiff] demanded the payment of the funds, with interest, for which he was entitled from prior years. At this time . . . Devino paid [the plaintiff] $8000 as either partial payment toward this obligation or as part of the $10,000 lump sum compensation that the plaintiff was owed for that year. The court rejects . . . Devino's assertion that this payment constituted a loan to the plaintiff. The plaintiff never received the additional $2000 owed for 1992. [The plaintiff] did not receive any additional lump sum compensation from 1993 until his termination on August 22, 1997."[6]

---

[6] The parties agree that during 1996 and 1997, shortly before the employment relationship ended, the plaintiff and Devino had some conversations about funds Devino allegedly owed the plaintiff, and whether or not he was willing or able to pay them. The parties also agree that sometime shortly after the plaintiff's employment was terminated, Devino paid the plaintiff approximately $5000. The parties disagree, however, as to whether the court characterized this payment as partial payment of that debt or severance pay.

On the basis of these facts, the plaintiff filed several claims against Devino.[7] In response, Devino raised various statutes of limitation as special defenses. As an initial matter, the court found that an enforceable agreement existed between the parties and that the claims were not barred by a statute of limitations. The court then found in favor of the plaintiff on his breach of contract claim and awarded damages.[8] The court also found that the plaintiff had established the elements of conversion, but did not award damages because they would be duplicative of the contract damages. Additionally, the court rendered judgment in favor of Devino on the plaintiff's claim of fraudulent misrepresentation.

A

The plaintiff first claims on his appeal that the court improperly concluded that he failed to meet his burden of proof on the claim of fraudulent misrepresentation. Specifically, he challenges the court's finding that there was "no credible evidence that . . . Devino had the present intention that he would not make the agreed upon payments to the plaintiff once the business climate improved." We are not persuaded.

Before reaching the merits of the plaintiff's claim on appeal, we begin by setting forth our standard of review and the relevant legal principles. "The party claiming fraud . . . has the burden of proof. . . . Whether that burden has been met is a question of fact that will not be overturned unless it is clearly erroneous. . . . A court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing

Because resolution of these disputes is not necessary to our consideration of the claims on appeal, we decline to resolve them.

[7] These claims comprised a civil action to collect wages pursuant to General Statutes § 31-72 and counts alleging breach of contract, conversion and fraudulent misrepresentation.

[8] The court declined to award double damages pursuant to § 31-72.

court is left with the definite and firm conviction that a mistake has been made." (Citations omitted; internal quotation marks omitted.) *Weinstein* v. *Weinstein*, 275 Conn. 671, 684, 882 A.2d 53 (2005).

"Under the common law . . . it is well settled that the essential elements of fraud are: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury. . . . All of these ingredients must be found to exist . . . . Additionally, [t]he party asserting such a cause of action must prove the existence of the first three of [the] elements by a standard higher than the usual fair preponderance of the evidence, which . . . we have described as clear and satisfactory or clear, precise and unequivocal." (Citation omitted; internal quotation marks omitted.) *Ferris* v. *Faford*, 93 Conn. App. 679, 692, 890 A.2d 602 (2006).

In this case, the basis of the court's conclusion that the plaintiff did not prove fraud is its finding that there was "no credible evidence that . . . Devino had the present intention that he would not make the agreed upon payments to the plaintiff once the business climate improved." "A representation about a promise to do something in the future, when linked with a present intention not to do it, is a false representation." (Internal quotation marks omitted.) *Kim* v. *Magnotta*, 49 Conn. App. 203, 225, 714 A.2d 38 (1998), rev'd on other grounds, 249 Conn. 94, 733 A.2d 809 (1999). Accordingly, such a promise "may constitute actionable fraud if it is blended with a misrepresentation of a material fact and an evasion of the very promise, after the promisee has performed." *Kavarco* v. *T.J.E., Inc.*, 2 Conn. App. 294, 300, 478 A.2d 257 (1984).

The plaintiff now claims that there was sufficient evidence for the court to find that Devino had the present intention not to fulfill the promise. "[O]ur function [on appeal] is not to examine the record to see if the trier of fact could have reached a contrary conclusion. . . . Rather, it is the function of this court to determine whether the decision of the trial court is clearly erroneous." (Internal quotation marks omitted.) *Allstate Ins. Co.* v. *Berube*, 84 Conn. App. 464, 469, 854 A.2d 53, cert. denied, 271 Conn. 929, 859 A.2d 583 (2004). Accordingly, our review is limited to whether there was sufficient evidence to support the court's finding that Devino lacked the present intention to fulfill his promise.

The parties concede that there is no direct evidence that Devino intended not to follow through on his promise. In fact, the court had evidence that after reaffirming the agreement in 1990, Devino paid at least part of the annual sum to the plaintiff in 1991 and 1992. Moreover, Devino testified, with regard to this agreement, that "I would never say something and not do it; that just wouldn't be something that I would do. When you're dealing with people in good faith, you just don't do those things. I wouldn't do it." On appeal, the plaintiff asks this court to conclude that Devino's testimony cannot be credited. "[I]t is the trier's exclusive province to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony." (Internal quotation marks omitted.) *Lowe* v. *Shelton*, 83 Conn. App. 750, 765, 851 A.2d 1183, cert. denied, 271 Conn. 915, 859 A.2d 568 (2004). We cannot, therefore, conclude that the court's finding that the plaintiff did not meet the heightened burden of proving fraud is clearly erroneous.

### B

On his appeal, Devino claims that the court incorrectly concluded that the plaintiff's claims as to the

promise to pay an annual sum were not barred by the limitations periods in General Statutes §§ 52-596 and 52-576. "Whether a party's claim is barred by the statute of limitations is a question of law that requires our plenary review." *Bellemare* v. *Wachovia Mortgage Corp.*, 94 Conn. App. 593, 605, 894 A.2d 335 (2006). We agree with the conclusion of the court.

Devino first asserts that the plaintiff's claims are barred by the statute of limitations in § 52-596. Section 52-596 provides in relevant part that "[n]o action for the payment of remuneration for employment payable periodically shall be brought but within two years after the right of action accrues . . . ." This statute, however, does not govern all payments by employer to employee. Connecticut courts have recognized that § 52-596 does not apply to certain agreements or forms of compensation. See, e.g., *Mace* v. *Conde Nast Publications, Inc.*, 155 Conn. 680, 237 A.2d 360 (1967) (lump sum severance payment does not constitute remuneration payable periodically); *Burns* v. *Koellmer*, 11 Conn. App. 375, 527 A.2d 1210 (1987) (action based on agreement between parties for payment of additional compensation accrued at time employer refused to pay, not at failure to pay during course of employment). Our analysis, therefore, begins with a threshold inquiry of whether the payment agreement between the parties falls under the ambit of this statute.

In this case, the determinative factor is whether the annual lump sum is "payable periodically." Section 52-596 does not define this term. "[W]here a statute does not define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *State* v. *Kalman*, 93 Conn. App. 129, 136, 887 A.2d 950, cert.

denied, 277 Conn. 915, 895 A.2d 791 (2006). In Ballentine's Law Dictionary (3d Ed. 1969), the term "periodical" is defined as "[o]ccurring at regular intervals."[9] Here, the plaintiff had a right to receive the lump sum periodically—every July. If that were the whole agreement, § 52-596 clearly would apply. Under the unique arrangement between the parties in this case, however, the plaintiff also had the right to defer payment for an indeterminate period of time and allow it to be held by Industrial Development and, in fact, exercised this option. The payments, therefore, no longer occurred at regular intervals. Consequently, § 52-596 does not apply to this agreement.[10]

Devino argues, in the alternative, that if the plaintiff's claims were not time barred by § 52-596, certain portions[11] are barred by § 52-576.[12] Section 52-576 (a) provides in relevant part that "[n]o action . . . on any simple or implied contract, or on any contract in writing,

[9] Similarly, Random House Webster's Unabridged Dictionary (2d Ed. 2001) defines "periodic" as "occurring or appearing at regular intervals."

[10] Because we conclude that General Statutes § 52-596 does not apply to the plaintiff's claims, we need not reach the question of whether the plaintiff brought his action within two years of his right accruing. Were we to reach the merits of this question, the plaintiff concedes that if § 52-596 applied to his claims, "then inasmuch as the lawsuit was brought more than two years after Devino informed the plaintiff of his intention to not (ever) pay in 1997, the claims would be barred."

[11] Devino asserts that the plaintiff's claims related to the payments from 1990, 1991 and 1992 are barred because the plaintiff demanded payment of these sums, which he had previously agreed to defer, in late 1992, more than six years prior to commencing this action. Additionally, he asserts that the statute bars the plaintiff's claim as to the 1993 payment, which he never agreed to defer.

[12] Although Devino pleaded the applicability of General Statutes § 52-576 in his special defenses, he did not brief it in his posttrial brief. Additionally, in its memorandum of decision, the court did not discuss the applicability of § 52-576 before reaching the merits of the plaintiff's claim. We nevertheless consider Devino's claim on appeal. When we are considering "purely a question of law warranting plenary review, the legal analysis undertaken by the trial court is not essential to this court's consideration of the issue on appeal." *Norwalk* v. *Farrell*, 80 Conn. App. 399, 406 n.10, 835 A.2d 117 (2003).

shall be brought but within six years after the right of action accrues . . . ."

In its memorandum of decision, when addressing Devino's other statute of limitations defense, the court found that Devino admitted that the plaintiff's cause of action accrued on August 22, 1997. "The determination of whether a party's statement is a judicial admission or an evidentiary admission is a question of fact for the trial court." *LaSalle National Bank* v. *Freshfield Meadows, LLC*, 69 Conn. App. 824, 830, 798 A.2d 445 (2002). Even when our review is plenary, "factual findings of the trial court that underlie that determination are entitled to the same deference on appeal that other factual findings command." (Internal quotation marks omitted.) *Monetary Funding Group, Inc.* v. *Pluchino*, 87 Conn. App. 401, 411, 867 A.2d 841 (2005). We conclude that the court's finding that Devino admitted that the cause of action accrued on August 22, 1997, is supported by the record.[13]

It is well established that "[a] party is bound by a judicial admission unless the court, in the exercise of its discretion, permits the admission to be withdrawn, explained or modified." (Internal quotation marks omitted.) *Levine* v. *Levine*, 88 Conn. App. 795, 804, 871 A.2d 1034 (2005). In light of Devino's admission, we need not consider the arguments made on appeal as to when the plaintiff's cause of action accrued.[14] As the plaintiff's claim was brought in March, 2000, within six years of

[13] In his posttrial brief, Devino states that "any cause of action that the plaintiff might have for payment of the $10,000 annual payment accrued August 22, 1997 at the latest, when [the] plaintiff left employment with [Industrial Development]. . . . Defendant Devino was served March 1, 2000, more than two and one-half years after the plaintiff's cause of action accrued."

[14] Similarly, we do not determine when the statute of limitations period on the plaintiff's claims began to run.

August 22, 1997, we conclude that it is not barred by § 52-576.[15]

## C

Devino's next two claims on appeal relate to the court's finding that the plaintiff proved the elements of conversion, even though the plaintiff was not awarded damages on the basis of this finding. Specifically, Devino claims that (1) the court incorrectly found that the plaintiff proved the elements of conversion and (2) the claim is barred by the statutes of limitation in §§ 52-596 and 52-577. Devino recognized that resolution of these claims becomes necessary only if we concluded that the plaintiff's recovery for breach of contract is barred by a statute of limitations. Because we conclude that the breach of contract claim is not time barred, and therefore the plaintiff still may recover on that theory, we need not reach Devino's claims related to conversion.

## II

The plaintiff's next claim on appeal arises from the court's finding in favor of Devino on all counts related to his promise to transfer an interest in Industrial Development to the plaintiff.

---

[15] Without the court's finding that Devino admitted the date that the plaintiff's cause of action accrued, we would not have an adequate record for review. Although our review as to whether the statute of limitations applies to a particular case is plenary, we give deference to the court's factual findings underlying that determination. Here, the record otherwise lacks in those findings. "It is well established that [i]t is the appellant's burden to provide an adequate record for review. . . . It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision . . . to clarify the legal basis of a ruling . . . *or to ask the trial judge to rule on an overlooked matter.* . . . In the absence of an articulation, we presume that the trial court acted properly." (Citation omitted; emphasis added; internal quotation marks omitted.) *Champagne* v. *Champagne*, 85 Conn. App. 872, 879, 859 A.2d 942 (2004).

The court found the following facts relevant to this claim. In 1989, when there was a downturn in the real estate market, the plaintiff approached Devino to discuss his job security. At that time, Devino told the plaintiff that he would receive a 5 percent interest in Industrial Development at the time he retired from or ended his employment with Devino. The parties, however, did not discuss how that 5 percent would be calculated; specifically, whether the interest related to the total value of all assets held by Industrial Development or the equity value of such holdings. Moreover, the parties did not reach an agreement as to when the value of the interest would be calculated, specifically, whether it would be calculated at the time the promise was made or at the time the plaintiff left his employment with Devino.

As he never received the 5 percent interest in Industrial Development, the plaintiff raised several claims against Devino.[16] On the basis of its factual findings, the court concluded that there was not an enforceable agreement between the plaintiff and Devino for the transfer of an interest in Industrial Development, nor could the plaintiff have justifiably relied on this promise. The court, therefore, found in favor of Devino on all of the plaintiff's claims.

## A

The plaintiff first claims that the court improperly found that there was not an enforceable agreement between the parties for the transfer to him of an interest in Industrial Development. We are unconvinced.

We begin by setting forth the applicable standard of review. "The existence of a contract is a question of fact to be determined by the trier on the basis of all of

---

[16] These counts sounded in a civil action to collect wages, breach of contract and fraudulent misrepresentation. The court struck an additional count against Devino, sounding in quantum meruit, prior to the hearing.

the evidence. . . . On appeal, our review is limited to a determination of whether the trier's findings are clearly erroneous. . . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) *MD Drilling & Blasting, Inc.* v. *MLS Construction, LLC*, 93 Conn. App. 451, 454, 889 A.2d 850 (2006).

"The rules governing contract formation are well settled. To form a valid and binding contract in Connecticut, there must be a mutual understanding of the terms that are definite and certain between the parties. . . . To constitute an offer and acceptance sufficient to create an enforceable contract, each must be found to have been based on an identical understanding by the parties. . . . If the minds of the parties have not truly met, no enforceable contract exists. . . . [A]n agreement must be definite and certain as to its terms and requirements. . . . So long as any essential matters are left open for further consideration, the contract is not complete." (Internal quotation marks omitted.) *Geary* v. *Wentworth Laboratories, Inc.*, 60 Conn. App. 622, 627, 760 A.2d 969 (2000).

The crux of the plaintiff's claim is that the parties assented to the essential elements of the agreement and, therefore, the agreement was enforceable. In his claim, the plaintiff does not challenge the court's factual finding that parties did not agree to the particular terms. Rather, the plaintiff argues that any uncertain terms were not essential elements, but instead were details

that could be worked out later. "We acknowledge that there is no bright line rule describing the essential elements of any and all enforceable contracts. Whether a term is essential turns on the particular circumstances of each case." (Internal quotation marks omitted.) *111 Whitney Avenue, Inc.* v. *Commissioner of Mental Retardation*, 70 Conn. App. 692, 701, 802 A.2d 117 (2002). In this case, the court's determination that the uncertain terms, the date at which Industrial Development was to be valued and the method of valuation, were essential terms of the contract is legally and logically correct. Cf. id., 701–702 (agreement unenforceable where plaintiffs did not prove amount of funds committed to investment, expected duration of investment, applicability of agreement to properties and investors not identified or effective date of agreement). Accordingly, the court's conclusion that the agreement was unenforceable is also correct.[17]

The essential nature of these terms becomes evident when one assumes arguendo that an enforceable agreement exists and that damages were appropriate. "It is axiomatic that the burden of proving damages is on the party claiming them. . . . When damages are claimed they are an essential element of the plaintiff's proof and must be proved with reasonable certainty." (Internal quotation marks omitted.) *U. B. Vehicle Leasing, Inc.* v. *Davis*, 90 Conn. App. 206, 214, 876 A.2d 1222 (2005). Here, the agreement between the parties

---

[17] Additionally, Devino's brother, who is now deceased, was a co-owner of Industrial Development. The court noted that the plaintiff's reliance on the promise, "without first ascertaining whether the agreement of the other parties such as [Devino's] brother would be required, is simply unjustifiable and unreasonable." We note that the failure to involve Devino's brother in the agreement is also problematic to its enforceability. See *Coady* v. *Martin*, 65 Conn. App. 758, 766, 784 A.2d 897 (2001) ("absence of a provision delineating the percentage of ownership of all of the parties in the company rendered the agreement fatally incomplete"), cert. denied, 259 Conn. 905, 789 A.2d 993 (2002).

is silent as to what point in time the value of Industrial Development was to be ascertained and how that value was to be calculated. The plaintiff now claims that there was sufficient evidence to serve as the basis to award damages because Devino testified that as of 1989, the total portfolio value of Industrial Development was $50 million. Use of the plaintiff's figures, therefore, requires the court to read into the agreement these terms in a particular manner. "[T]he court will not make for [the parties] a contract which they themselves did not make." (Internal quotation marks omitted.) *MD Drilling & Blasting, Inc.* v. *MLS Construction, LLC*, supra, 93 Conn. App. 456. Accordingly, the plaintiff is unable to meet his burden of proving damages, and the court correctly determined that it could not estimate them with a reasonable degree of certainty.[18]

B

The plaintiff next claims that the court incorrectly determined that he could not recover on his fraudulent misrepresentation claim against Devino. Specifically, he argues that the court incorrectly found that he had not proved justifiable reliance on the promise. We disagree.

"Proving a false representation is . . . only one part of a claim of actionable misrepresentation. To prevail, the plaintiff also [is] required to show that he reasonably relied on that misrepresentation. One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for

---

[18] We further note that because the court properly concluded that there was not an enforceable agreement to transfer the interest in Industrial Development and that the plaintiff did not prove fraudulent misrepresentation, there is no theory of recovery remaining under which the plaintiff is entitled to receive damages, even if there was sufficient evidence for the court to calculate them with a reasonable degree of certainty.

pecuniary loss caused to them by their *justifiable reliance* upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." (Emphasis in original; internal quotation marks omitted.) *Visconti* v. *Pepper Partners Ltd. Partnership*, 77 Conn. App. 675, 682–83, 825 A.2d 210 (2003). "Whether evidence supports a claim of fraudulent . . . misrepresentation is a question of fact." (Internal quotation marks omitted.) *Mips* v. *Becon, Inc.*, 70 Conn. App. 556, 558, 799 A.2d 1093 (2002). Accordingly, this court must determine whether the factual finding by the trial court that the evidence does not support a finding of justifiable reliance is supported by the record.

In support of its finding that the plaintiff's reliance on Devino's promise was not justifiable, the court noted the vague nature of the promise, as well as the failure of the parties to define key terms, put the agreement in writing or consider the involvement of Industrial Development's co-owners. Additionally, the court noted that it was unconvinced that the plaintiff would have sought other employment in the absence of the promise. On appeal, the plaintiff does not argue that these factual findings were clearly erroneous. Instead, he argues that the court was showing Devino "fatherly-like" concern for making a poor deal and that the relationship between the parties was unequal. The nature of the plaintiff's argument here is essentially the same as on its other fraud claim: that the court had sufficient evidence to find justifiable reliance. "As an appellate tribunal, it is not our function either to second guess the considered judgment of the trial court or to ignore the record before us." (Internal quotation marks omitted.) *Higgins* v. *Liston*, 88 Conn. App. 599, 614, 870 A.2d 1137, cert. denied, 276 Conn. 911, 886 A.2d 425 (2005), 546 U.S. 1220, 126 S. Ct. 1444, 164 L. Ed. 2d 143 (2006). We therefore need not consider whether the court *could*

have found justifiable reliance but instead limit our examination to whether its finding that there was not justifiable reliance is supported by the record. Because we conclude that it is, we reject the plaintiff's claim that the court should have found justifiable reliance.

It is well established that the absence of any element of a claim of fraud is fatal to the plaintiff's recovery. *Harold Cohn & Co.* v. *Harco International, LLC*, 72 Conn. App. 43, 51, 804 A.2d 218, cert. denied, 262 Conn. 903, 810 A.2d 269 (2002). As the plaintiff has not demonstrated that his reliance on Devino's promise was justifiable, he cannot succeed on this claim.

### III

The remaining claims are raised on appeal by Building Structures. Each claim arises from the court's judgment in favor of the plaintiff on his breach of contract claim related to Building Structures' promise to pay him a 10 percent commission.

The following additional facts, found by the court, are relevant to these claims on appeal. During the course of the plaintiff's employment, Devino formed Building Structures for the purpose of completing construction projects on properties owned by other parties. In 1991, the plaintiff and Building Structures, through Devino, entered into an oral agreement that Building Structures would pay the plaintiff a commission for each construction project completed by Building Structures for which the plaintiff acted as construction manager. Specifically, the plaintiff's commission would be equal to 10 percent of the profit Building Structures made on each of these projects.[19]

Building Structures completed four construction projects during the course of the plaintiff's employment.

---

[19] This commission was in addition to the wages and benefits that the plaintiff earned from Industrial Development and the $10,000 forbearance payment.

The parties agree that the plaintiff received his commission for two of these projects. The plaintiff, therefore, brought claims for breach of contract and unjust enrichment against Building Structures for commissions from the other two projects.[20] The court agreed that the plaintiff had not received those commissions. The first of these unpaid commissions was for the Petron Automation project, which was completed on or about December 1, 1993. With regard to this project, the court determined that the plaintiff's claim was barred by the statute of limitations in § 52-576 and rendered judgment in favor of Building Structures. The second of these unpaid commissions was for the New England Country Bakers (Bakers) project, which was completed on or about May 1, 1995. With regard to this project, the court rendered judgment in favor of the plaintiff on his breach of contract claim[21] and determined that he was entitled to recover $21,862.

## A

Building Structures first claims that the court incorrectly found that an enforceable agreement for the payment of the commissions existed between the parties. Specifically, Building Structures argues that the court could not enforce the agreement because there was no mutual understanding as to an essential element of the contract. The law applicable to this claim is the same as that which we already have applied to the plaintiff's similar claim against Devino in part II A. Accordingly, we must look to whether the court's conclusion that the terms of the agreement are sufficiently certain as to render the agreement enforceable is legally and logically correct. We conclude that it is.

[20] Two additional counts against Building Structures, sounding in the doctrine of quantum meruit and a civil action to collect wages, were stricken prior to the hearing.

[21] The court did not address the plaintiff's unjust enrichment claim because it concluded that a valid enforceable contract existed between the parties.

Building Structures argues only that because the parties never expressly agreed to how profits would be calculated, the agreement is unenforceable. "A court may . . . enforce an agreement if the missing terms can be ascertained, either from the express terms or by fair implication. . . . Thus, an agreement, previously unenforceable because of its indefiniteness, may become binding if the promise on one side of the agreement is made definite by its complete or partial performance." (Citation omitted; internal quotation marks omitted.) *Geary* v. *Wentworth Laboratories*, supra, 60 Conn. App. 627–28. Here, the court found that the parties, at the time the promise was made, understood and agreed that the profit would be determined by subtracting the job costs from the contract price for each Building Structures project and that the commission would be 10 percent of that amount. The court further found that this meeting of the minds was evidenced by the conduct of the parties after reaching the agreement. Devino testified that this formula was the manner of calculating the commission. Moreover, the plaintiff testified that the commission he received on one of the projects was calculated according to the formula understood by the parties. In light of this evidence, the court was within its discretion to conclude that the parties had a mutual understanding as to how the commission would be calculated and that an enforceable agreement, therefore, existed between the parties.

B

Building Structures next claims that the court improperly admitted the plaintiff's exhibits 9F and 9G into evidence. We are not persuaded.

The following additional facts are necessary to our resolution of Building Structures' claim. During the plaintiff's testimony about his knowledge of job costs

for the Bakers project, exhibits 9F and 9G were marked for identification. The plaintiff testified that each exhibit was a computer generated record of the job cost details for this project. The plaintiff also observed that the date on exhibit 9F was September 18, 2001, and the date on exhibit 9G was April 26, 1995. The following day, Georgette Finnemore, a former employee of the defendants, testified that as part of her duties, she would enter into the computer invoices for work performed on Building Structures construction projects and then make payments to the various vendors and subcontractors. Finnemore was then shown exhibits 9F and 9G and testified about her knowledge of the preparation and contents of those documents.

The plaintiff then offered exhibits 9F and 9G for admission into evidence as full exhibits, whereupon Building Structures questioned Finnemore further about her knowledge of the preparation and contents of the documents. Building Structures then objected to the admissibility of the exhibits on the ground that they were not a complete statement of the job costs for the Bakers project. The court denied the objection and admitted exhibits 9F and 9G as full exhibits.[22] The trial then proceeded with no further objection to the exhibits.

---

[22] The colloquy between the defendants and the court was as follows:

"[The Defendants' Counsel]: Well, I would object to admissibility, Your Honor, on the grounds that there's no evidence that—if these are being offered as evidence of the job costs, which I assume is the purpose of the offer, I don't think he's laid a proper foundation because he hasn't shown that they are a complete statement of that. Basically, they could be admitted as far as they go, but there's no evidence that these are the complete job costs.

"The Court: The court's convinced, in light of the witness' testimony, and [the plaintiff], that these records are sufficiently reliable and that the foundations have been sufficiently laid to be admitted as full exhibits under the business record exception [to the hearsay rule], and they're admitted as full exhibits. Certainly, if you have additional information or documents or testimony regarding their weight, you'll be free to explore that."

We begin by setting forth the applicable law. "To admit evidence under the business record exception to the hearsay rule, a trial court judge must find that the record satisfies each of the three conditions set forth in General Statutes § 52-180. The court must determine, before concluding that it is admissible, that the record was made in the regular course of business, that it was in the regular course of such business to make such a record, and that it was made at the time of the act described in the report, or within a reasonable time thereafter. . . . To qualify a document as a business record, the party offering the evidence must present a witness who testifies that these three requirements have been met. . . . Section 52-180 is to be liberally construed, and our review is limited to determining whether the trial court abused its discretion in admitting the challenged evidence. . . .

"It is a fundamental rule of appellate procedure in the review of evidential rulings, whether resulting in the admission or exclusion of evidence, that an appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him. . . . We have often stated that before a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . When determining that issue in a civil case, the standard to be used is whether the erroneous ruling would likely affect the result. . . . Moreover, "[i]t is well recognized that any error in the admission of evidence does not require reversal of the resulting judgment if the improperly admitted evidence is merely cumulative of other validly admitted testimony." (Citations omitted; internal quotation marks omitted.) *Cadle Co.* v. *Errato*, 71 Conn. App. 447, 466–67, 802 A.2d 887, cert. denied, 262 Conn. 918, 812 A.2d 861 (2002).

Additionally, because the exhibits at issue are computer generated records, they are subject to another layer of scrutiny. "[E]vidence is not inadmissible because the business record is created, stored or produced by means of computer technology. . . . When computer records are offered as evidence, the proponent must satisfy a two part test. In addition to meeting the three requirements of the business records exception to the hearsay rule . . . the proponent also must establish that the basic elements of the computer system are reliable." (Internal quotation marks omitted.) *Emigrant Mortgage Co.*, v. *D'Agostino*, 94 Conn. App. 793, 809, 896 A.2d 814 (2006).

Building Structures argues that exhibit 9F was admitted improperly because it was not prepared contemporaneously with or soon after the events in question. Building Structures also argues that exhibit 9G was admitted improperly because the plaintiff failed to prove that it was produced by a reliable computer program. We conclude that these claims were not preserved properly for appeal. "[T]he standard for the preservation of a claim alleging an improper evidentiary ruling at trial is well settled. This court is not bound to consider claims of law not made at the trial. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling. . . . Once counsel states the authority and ground of [the] objection, any appeal will be limited to the ground asserted." (Internal quotation marks omitted.) *State* v. *Cabral*, 275 Conn. 514, 530–31, 881 A.2d 247, cert. denied, 546 U.S. 1048, 126 S. Ct. 773, 163 L. Ed. 2d 600 (2005).

In this case, the objection to the admission of exhibits 9F and 9G was that the plaintiff failed to lay a proper foundation for their introduction because they were not a "complete statement" of the job costs. Building Structures never objected at trial to their admissibility because they did not meet the temporal requirements of the business records exception to the hearsay rule or because they were not produced by a reliable computer program. In fact, Building Structures conceded that the exhibits "could be admitted as far as they go . . . ." Accordingly, this court cannot consider these arguments for the first time on appeal.

Building Structures next argues that exhibit 9G was admitted improperly because the plaintiff failed to prove that it was a complete statement of the costs attributable to the project. Building Structures, however, cites no law on appeal, nor did it offer any at trial, requiring that the statement of job costs be complete in order to be admitted under the business records exception to the hearsay rule. Rather, this court has determined that "[w]hile the circumstances of the making of [the records] may be shown to affect the weight of that evidence . . . there is no requirement that the accuracy of a business record be proved as a prerequisite to its admission." (Internal quotation marks omitted.) *Federal Deposit Ins. Corp.* v. *Carabetta*, 55 Conn. App. 369, 375, 739 A.2d 301, cert. denied, 251 Conn. 927, 742 A.2d 362 (1999). In light of the plaintiff's and Finnemore's testimony that the data entries were accurate, made in the regular course of business and contemporaneous with the events, we conclude that the court did not abuse its discretion in admitting exhibit 9G, even if it was incomplete, under the business records exception to the hearsay rule.

C

Building Structures next claims that even if exhibits 9F and 9G were admitted properly, the court abused

its discretion by using them as the basis for calculating profits[23] because they are incomplete statements of the costs attributable to the Bakers project. We disagree.

We begin by setting forth our standard of review. "[T]he trial court has broad discretion in determining damages. . . . The determination of damages involves a question of fact that will not be overturned unless it is clearly erroneous." (Internal quotation marks omitted.) *Russell* v. *Russell*, 91 Conn. App. 619, 643, 882 A.2d 98, cert. denied, 276 Conn. 924, 925, 888 A.2d 92 (2005). "Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty. . . . Thus, [t]he court must have evidence by which it can calculate the damages, which is not merely subjective or speculative, but which allows for some objective ascertainment of the amount." (Internal quotation marks omitted.) *Valentin* v. *Community Remodeling Co.*, 90 Conn. App. 255, 261, 876 A.2d 1252 (2005).

Building Structures now challenges only the court's use of $497,094 as the total job costs for the Bakers project. Specifically, it argues that because Finnemore testified that someone else could have billed additional expenses after she left employment with the defendants and that the job costs contained in exhibits 9F and 9G did not include some overhead costs, the court could not base its award of damages on those exhibits. We conclude that the court's calculation of damages is supported by the record. Exhibit 9F reflects job costs of $497,094.11. The court was free to credit this evidence and use it in calculating the amount of damages to award the plaintiff. We will not revisit the court's credibility determinations. See *Mattson* v. *Mattson*, 74 Conn.

---

[23] The court determined that the total contract price for the Bakers project was $715,716 and that the total job costs were $497,094, thereby resulting in a profit to Building Structures of $218,622. The 10 percent commission the plaintiff was entitled to receive, therefore, was $21,862.

App. 242, 246, 811 A.2d 256 (2002). The court, therefore, did not abuse its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.