# FIRST UNION NATIONAL BANK *v.* WILLIAM S. WOERMER ET AL.
## (AC 25830)

Schaller, McLachlan and Harper, Js.

Argued September 19—officially released December 27, 2005

*Richard P. Weinstein*, with whom was *Nathan A. Schatz*, for the appellants (named defendant et al.).

*Jennifer S. Allison*, for the appellee (substitute plaintiff).

*Opinion*

McLACHLAN, J. The defendants William S. Woermer and Charlotte P. Woermer[1] appeal from the judgment of strict foreclosure rendered in favor of the substitute

---

[1] Several subsequent encumbrancers also were named as defendants in this action, but they are not parties to this appeal. We therefore refer in this opinion to the Woermers as the defendants.

plaintiff, EMC Mortgage Corporation.[2] The defendants claim that the trial court improperly (1) continued to exercise jurisdiction over the action after it failed to render judgment within 120 days of the filing of posttrial briefs and (2) admitted into evidence two of the plaintiff's exhibits that were submitted to establish the principal amount of the debt. We affirm the judgment of the trial court.

The court's memorandum of decision and the record reveal the following facts. On August 25, 1998, the defendants executed an open-end mortgage in favor of Centerbank on property at 103 Warren Avenue in Naugatuck to secure the payment of a debt. In 1997, Centerbank merged with and into First Union Bank of Connecticut. First Union Bank of Connecticut then merged with and became First Union National Bank (First Union), which instituted the present foreclosure action in May, 2000, against the defendants for nonpayment of the debt.

First Union assigned all loan documents on the defendants' loan to the plaintiff, as part of a bulk sale of loans, by assignment recorded on July 23, 2001. On March 24, 2003, the court granted the plaintiff's motion for default against William Woermer for failure to comply with the plaintiff's request for disclosure and production. On July 14, 2003, the court granted the plaintiff's motion for default against Charlotte Woermer for failure to comply with the plaintiff's request for disclosure and production. The defendants filed motions to open the defaults, which motions were denied by the court on September 15, 2003. Judgment of strict foreclosure was rendered on September 15, 2003.

---

[2] First Union National Bank initiated this foreclosure action by way of a complaint dated May 22, 2000. EMC Mortgage Corporation (EMC) was substituted as the party plaintiff on August 13, 2001. During the pendency of the appeal, EMC assigned its interest in the subject note and mortgage to West Coast Realty Services, Inc. (West Coast). Although this court granted EMC's motion to substitute West Coast as the party plaintiff on July 14, 2005, we refer in this opinion to EMC as the plaintiff.

The defendants filed a motion to open the judgment of strict foreclosure on September 25, 2003. The court granted the defendants' motion on October 7, 2003, for the sole purpose of holding a hearing to determine the judgment debt and the fair market value of the property. The court specifically denied the motions to open the defaults for failure to comply with discovery requests. The plaintiff's motion for judgment of strict foreclosure was heard before the court, *Hon. Howard J. Moraghan*, judge trial referee, on November 25, 2003. When it became apparent that more than one day of testimony would be required, Judge Moraghan informed the parties that he had sufficient evidence to make a finding as to the fair market value of the property, but that a mistrial would have to be declared as to the remaining issues. The parties agreed that Judge Moraghan would determine the value of the mortgaged property and that the remaining issues would be assigned to another judge for determination at a later date. The court thereupon found the fair market value of the property to be $197,000 and declared a mistrial as to the remaining issues.

On January 7 and 8, 2004, the parties appeared before the court, *Gallagher, J.*, and presented evidence. The court, over the objection of the defendants, admitted the plaintiff's exhibits seven and twelve into evidence. After the conclusion of the evidence, the parties submitted briefs. The plaintiff filed its brief on January 21, 2004, and the defendants filed their brief on January 22, 2004. On May 14, 2004, the court issued its memorandum of decision, finding a total mortgage debt of $182,215.77 as of January 7, 2004.

By motion dated May 27, 2004, the plaintiff sought a judgment of strict foreclosure. The defendants filed an objection to that motion and additionally filed a motion for a mistrial, claiming that the court failed to render judgment within 120 days of the completion date of the

trial as required by General Statutes § 51-183b.[3] The court denied the motion for a mistrial on September 1, 2004, and issued a corrected memorandum of decision on the motion for a mistrial on November 1, 2004. The plaintiff's motion for a judgment of strict foreclosure was granted by the court on September 7, 2004. This appeal followed.

## I

The defendants claim that the court improperly continued to exercise jurisdiction over the action when it failed to render judgment and set law days within 120 days after the submission of briefs following the conclusion of the proceeding before Judge Gallagher, as required by § 51-183b. We address that claim first because the defendants raise a jurisdictional issue. See *Levine* v. *Levine*, 88 Conn. App. 795, 798, 871 A.2d 1034 (2005).

The proceeding[4] before Judge Gallagher took place on January 7 and 8, 2004. At the outset of the first day, after the plaintiff's counsel provided the court with a

---

[3] General Statutes § 51-183b provides: "Any judge of the Superior Court and any judge trial referee who has the power to render judgment, who has commenced the trial of any civil cause, shall have power to continue such trial and shall render judgment not later than one hundred and twenty days from the completion date of the trial of such civil cause. The parties may waive the provisions of this section."

[4] The defendants, in their motion for a mistrial, characterized the proceeding as a trial. The plaintiff, in its opposition to the motion, characterized the proceeding as a short calendar matter, which would not be subject to the provisions of General Statutes § 51-183b. In response, the defendants counter that even if the plaintiff is correct in its designation of the proceeding, the court nevertheless failed to render a timely decision because Practice Book § 11-19 similarly contains a 120 day deadline.

Section 11-19 provides: "(a) Any judge of the superior court and any judge trial referee to whom a short calendar matter has been submitted for decision, with or without oral argument, shall issue a decision on such matter not later than 120 days from the date of such submission, unless such time limit is waived by the parties. In the event that the judge or referee conducts a hearing on the matter and/or the parties file briefs concerning it, the date of submission for purposes of this section shall be the date the matter is heard or the date the last brief ordered by the court is filed, whichever occurs later. If a decision is not rendered within this period the

brief procedural history, the court and counsel engaged in a colloquy as to the purpose of that day's hearing.[5]

matter may be claimed in accordance with subsection (b) for assignment to another judge or referee.

"(b) A party seeking to invoke the provisions of this section shall not later than fourteen days after the expiration of the 120 day period file with the clerk a motion for reassignment of the undecided short calendar matter which shall set forth the date of submission of the short calendar matter, the name of the judge or referee to whom it was submitted, that a timely decision on the matter has not been rendered, and whether or not oral argument is requested or testimony is required. The failure of a party to file a timely motion for reassignment shall be deemed a waiver by that party of the 120 day time."

[5] The following colloquy occurred:

"The Court: So, what we're talking about is basically just to be determined today is just the amount of the debt. Does everybody agree with that?

"[The Plaintiff's Counsel]: Well—

"[The Defendants' Counsel]: If any, Your Honor, yes.

"The Court: If any.

"[The Plaintiff's Counsel]: We believe that once, Your Honor, and this may be something that Your Honor may want to reserve for a short calendar day as well, but we believe that the evidentiary hearing has to [take] place today in order to determine the amount of the debt under the default which still exists, which says that there's liability on this note from the debtor to our client.

"The Court: Does everybody agree that liability has been determined?

"[The Plaintiff's Counsel]: It has been—there's a default.

"[The Defendants' Counsel]: Well—

"The Court: All right.

"[The Defendants' Counsel]:—I agree there's a default.

"The Court: There's a default.

"[The Defendants' Counsel]: And when there's a default, the court certainly has the right to enter an award for nominal damages.

"[The Plaintiff's Counsel]: Under—and under Practice Book § 17-33 (b), since the effect of a default is to preclude the defendant from making any further defenses as to liability, the judicial authority may go to a judgment in a foreclosure matter immediately upon proof of the debt. So, we intend to prove the debt today. I'm sure we will. And when we—when we prove the debt, at that time, the court would have to do additional things.

"It would have to also make findings just as in a short calendar hearing, you would on a foreclosure matter as to whether or not it should be a strict foreclosure if there's found to be a debt, which I'm quite sure there will be; you have to make a finding as to if it's going to be a strict foreclosure or a foreclosure by sale, what the value of the attorney's fees are to be awarded, if any, and what the value of the title search fee would be, if it's going to be a foreclosure by sale, how it's going to happen, the committee of sale, etc.

After a few other preliminary matters, the plaintiff proceeded with its case. Evidence concluded on January 8, 2004. At that time, the court requested counsel to submit briefs within two weeks. The plaintiff's brief was filed on January 21, 2004; the defendants' brief was filed on January 22, 2004. The court filed its memorandum of decision on May 14, 2004, finding a total mortgage debt of $182,215.77 as of January 7, 2004. The court did not render judgment of foreclosure at that time. By motion dated May 27, 2004, the plaintiff sought judgment of strict foreclosure and an assignment of law days, to which the defendants filed an objection. The defendants additionally filed a motion for a mistrial on June 3, 2004, claiming that the court failed to render its decision within 120 days of January 22, 2004, the completion date of the trial.[6] The court denied the defendants' motion for a mistrial, concluding that the decision as to the amount of the debt was the only decision that had to be rendered within the mandatory 120 day period.[7] The court granted the plaintiff's motion for a

"Just as the court would do on any short calendar hearing, except you won't have to make a finding as to the value because Judge Moraghan already made that finding. So, I think those are the findings that you have to make.

"I think the only decision you really have to make as far as the evidence goes today is the value of the debt, but other than that, I think the other matters are all discretionary on the court's part, just as it would be on a short calendar day.

"Now, whether or not the court makes that decision today or, if we're not done with the evidence today, tomorrow, it's entirely up to the court. If you want to—so, but I think those things all need to take place, too."

[6] To comply with the 120 day rule contained in General Statutes § 51-183b or Practice Book § 11-19, the court's memorandum of decision would have to have been filed on or before May 21, 2004.

[7] As the court noted in its corrected memorandum of decision on the defendants' motion for a mistrial: "For reasons previously stated, the court considers the proceedings on January 7 and 8, 2004, as a short calendar matter, necessarily antecedent to a determination of whether the foreclosure sought by the plaintiff would either be a strict foreclosure or foreclosure by sale."

judgment of strict foreclosure on September 7, 2004, and judgment was rendered accordingly.

We first note that it is not necessary to resolve the issue of whether the subject proceeding before Judge Gallagher was a trial or a short calendar matter. It is undisputed that the court was required to issue its decision within 120 days of January 22, 2004, the date of the submission of the defendants' brief, regardless of whether the provisions of General Statutes § 51-183b or Practice Book § 11-19 applied.[8] The issue before this court is whether the decision as to the amount of the debt issued by the trial court on May 14, 2004, satisfied the mandatory 120 day rule. We conclude that it did.

The court was entitled to rely on the representations by counsel on January 7, 2004, that the purpose of the evidentiary hearing was to determine the amount of the mortgage debt, if any. From the colloquy previously recited; see footnote 5; the court reasonably could have concluded that evidence was to be presented to establish the debt in order for the court to make a finding as to that issue. Subsequently, after that determination was made, depending on the amount of the debt, if any, in comparison with the fair market value, it then would be determined whether it would be appropriate to render judgment of strict foreclosure or judgment of foreclosure by sale.[9] Counsel for the plaintiff stated that

[8] The plaintiff argues that the defendants failed to comply with Practice Book § 11-19 (b) if the proceeding is characterized as a short calendar matter. This court concludes, however, that the defendants' motion for a mistrial was filed within the requisite fourteen day period. Although not titled a motion for reassignment, the pertinent information was contained within that motion, and it should be treated as having fulfilled the requirement of Practice Book § 11-19 (b). As set forth in Practice Book § 1-8: "The design of these rules being to facilitate business and advance justice, they will be interpreted liberally in any case where it shall be manifest that a strict adherence to them will work surprise or injustice."

[9] No arguments were made during the proceeding before Judge Gallagher as to whether judgment should be rendered by way of a strict foreclosure or a foreclosure by sale. No dates were proposed, and no suggestions were given as to advertising or a preferred committee of sale.

further matters would need to be resolved after the court's determination of the mortgage debt at a short calendar proceeding. In fact, at the time of the proceeding before Judge Gallagher, there was no pending motion for a judgment of strict foreclosure filed by the plaintiff.[10]

The parties agreed that the purpose of the hearing before Judge Gallagher was to determine the amount of the mortgage debt, if any. That is exactly what the court did, and it did so within 120 days of the submission of the last brief. It should also be noted that the court's memorandum of decision specifically states that "[t]his court heard testimony on January 7 and 8, 2004, for the sole purpose of establishing the amount of the debt."[11] At no point in time did the defendants indicate that they expected judgment to be rendered at the time Judge Gallagher determined the amount of the debt. For this court to determine now that the trial court should have made additional findings, when the understanding of counsel as expressed on January 7, 2004,

[10] A review of the trial court file indicates that a motion for judgment of strict foreclosure had been filed by First Union on June 28, 2000, which was granted by the court on July 17, 2000, and that judgment was rendered accordingly. First Union filed a motion to open that judgment on August 28, 2000, to add a party defendant, which was granted by the court on August 28, 2000. First Union filed a subsequent motion for judgment of strict foreclosure on July 23, 2001, which was granted by the court on September 25, 2003, and judgment was rendered accordingly. The defendants filed a motion to open that judgment on September 25, 2003, which was granted by the court on October 7, 2003. There was no pending motion for judgment of strict foreclosure at the time of the proceeding before Judge Gallagher on January 7 and 8, 2004. The plaintiff did not file a motion for judgment of strict foreclosure until May 27, 2004, after the court issued the memorandum of decision on May 14, 2004, determining the amount of the mortgage debt. That motion was granted by the court on September 7, 2004, and judgment was rendered accordingly.

[11] The decision was filed May 14, 2004. The expiration of the 120 day period was May 21, 2004. The defendants did not file any pleading indicating that they disagreed with the court's understanding of the purpose of the evidentiary hearing within that seven day time period.

was that the determination would be limited as described, would allow "trial by ambuscade" of the trial judge. See *Larobina* v. *McDonald*, 274 Conn. 394, 402, 876 A.2d 522 (2005).

There are no statutory or Practice Book provisions that require that all issues in connection with a foreclosure action, including the rendition of judgment, be determined at the same time.[12] In the interest of judicial economy, it is preferred that a case be judicially disposed of as expeditiously as possible. If counsel indicate, and the trial court agrees, however, that it is preferable to resolve particular issues antecedent to the rendition of judgment, this court will not second-guess that decision. Accordingly, we conclude that the trial court issued its decision within the mandatory 120 days.

## II

The defendants also claim that the court improperly admitted the plaintiff's exhibits seven and twelve into evidence. The defendants argue that exhibit seven was not authenticated properly as a record of Centerbank or First Union to be admissible as a business record and that exhibit twelve did not qualify as a business record because the plaintiff failed to provide sufficient foundational testimony for admission under General Statutes § 52-180.[13]

---

[12] Even if there were such requirements, we conclude that the parties by their conduct waived the 120 day rule. Waiver need not be express and may be implied from a party's conduct. *Franklin Credit Management Corp.* v. *Nicholas*, 73 Conn. App. 830, 836, 812 A.2d 51 (2002), cert. denied, 262 Conn. 937, 815 A.2d 136 (2003).

[13] General Statutes § 52-180 provides: "(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter.

"(b) The writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the

"On appeal, the trial court's rulings on the admissibility of evidence are accorded great deference. . . . Rulings on such matters will be disturbed only upon a showing of clear abuse of discretion. . . . General Statutes § 52-180 provides a business records exception to the hearsay rule. Section 52-180 permits hearsay evidence to be admitted if (1) this writing was made in the regular course of business, (2) it was the regular course of the business to make such a writing, and (3) the writing was made at the time of the transaction or occurrence or within a reasonable time thereof. . . . To qualify a document as a business record, the party offering it must present a witness who testifies that these three requirements have been met. . . . The trial court has discretion to determine whether the statute is satisfied and appellate courts must construe the statute liberally when reviewing abuse of discretion." (Citations omitted; internal quotation marks omitted.) *State v. Huckabee*, 54 Conn. App. 758, 761–62, 738 A.2d 681 (1999).

## A

The defendants claim that the court improperly admitted exhibit seven into evidence because the plaintiff failed to authenticate that document as a record of Centerbank or First Union. Exhibit seven is the defendants' mortgage history from Centerbank generated by the CPI computer system, which is the system used by Centerbank and First Union when Centerbank merged into First Union.

In offering the document, the plaintiff presented testimony from Carissa Fercodini, a former employee of

writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such persons are unavailable as witnesses. Either of such facts and all other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of the evidence, but not to affect its admissibility."

Centerbank and First Union. She indicated that she had worked for Centerbank or its successors since 1988 and held various positions within those institutions, including payment processor, customer service and loan processor. She also testified that by virtue of her duties, she had firsthand knowledge of how the CPI system worked.[14] The CPI system was the payment processing system. The keeping and accessing of computer records from that system, including loan histories, was one of her responsibilities. After identifying exhibit seven as the defendants' mortgage history with Centerbank, she testified that the records with the CPI system were made in the regular course of the bank's business, that it was the regular course of the business to make that type of record at the time the transactions listed therein occurred, that she personally utilized the computer system that generated the document to obtain information relating to loans owned or serviced by Centerbank, that it was the same computer system utilized by First Union after the merger and that the bank computer system was reliable.

Upon voir dire by the defendants' counsel, Fercodini indicated that she did not create the document and that she had no responsibility in connection with the defendants' loan. She further indicated that she did not bring the document to court or provide it to the plaintiff's counsel. Over objection of the defendants' counsel, the court admitted exhibit seven into evidence.

The defendants claim that the court improperly admitted exhibit seven because the plaintiff failed to authenticate the document as a record of Centerbank or First Union. The only basis for that claim presented by the defendants is the contention that the witness could not vouch for the origin of the document. She did not create it and did not bring it into court. For

[14] Fercodini could not tell the court what the initials "CPI" represent.

that reason, the defendants argue, she had no personal knowledge that it came from the files of Centerbank or First Union. The court finds that argument unpersuasive.

The issue of proper authentication of business records was addressed in *New England Savings Bank v. Bedford Realty Corp.*, 246 Conn. 594, 717 A.2d 713 (1998), in which our Supreme Court concluded that a business record may be admitted even though the qualifying witness lacks personal knowledge of the origin of the document. After specifically stating that it is not necessary to establish a chain of title to authenticate a business record, the court indicated that a document may be authenticated by direct testimony, circumstantial evidence or proof of custody. Id., 604.

"The requirements for authenticating a business record are identical to those for laying a foundation for its admissibility under the hearsay exception. It is generally held that business records may be authenticated by the testimony of one familiar with the books of the concern, such as a custodian or supervisor, who has not made the record or seen it made, that the offered writing is actually part of the records of the business." (Internal quotation marks omitted.) Id. The court noted that establishing a chain of custody should not be a requirement for authentication for persuasive policy considerations. Id., 605. Present day foreclosure actions often involve failed banks and mortgage loans that have been assigned several times. "To require testimony regarding the chain of custody of such documents, from the time of their creation to their introduction at trial, would create a nearly insurmountable hurdle for successor creditors attempting to collect loans originated by failed institutions." Id.

"The witness who authenticates a business record need not have prepared the report. The witness need

only testify as to his familiarity with the computer system and its reliability, that the record was produced in the regular course of business and that it was the regular course of business to produce the records for the document to be admitted properly." *Federal Deposit Ins. Corp.* v. *Carabetta*, 55 Conn. App. 369, 382, 739 A.2d 301, cert. denied, 251 Conn. 927, 742 A.2d 362 (1999). That is precisely the situation in the present case. The qualifying witness was very familiar with the records and the CPI computer system used by Centerbank and First Union, because she had been an employee of both institutions for several years and had worked extensively with the computer system. She identified exhibit seven as a loan history originating from Centerbank. She was not required to be personally familiar with the defendants' loan or to have personal knowledge of the origin of the document. Exhibit seven was authenticated properly and was admitted properly by the court as a full exhibit.

B

The defendants' final claim is that the court improperly admitted exhibit twelve as a business record because the testimony of the qualifying witness did not establish that the statutory requirements of § 52-180 had been met. Exhibit twelve is a master record report from the plaintiff, indicating the balance of the defendants' loan at the time the plaintiff acquired the loan through a bulk purchase of loans from First Union.

In offering the document, the plaintiff presented testimony from Annette Anderson, a senior litigation paralegal employed by the plaintiff. She testified that she has been employed by the plaintiff since 1992, holding her current position for more than three years. She testified that she is personally familiar with the defendants' loan, the file having been transferred to her department when the matter became a contested foreclosure, and that

she was in charge of overseeing that particular asset. She testified that the plaintiff acquired the defendants' loan by way of a bulk purchase of loans from First Union, that a bulk purchase of loans was an activity within the course of the plaintiff's business and that the plaintiff owned the defendants' note and mortgage at the time of the proceeding before Judge Gallagher.

Through Anderson's testimony, it was established that exhibit twelve reflected the balance of the defendants' loan at the time it was transferred to the plaintiff. The information from that document was utilized by the plaintiff in setting up the defendants' loan on its computer system and is typical in a transaction in which a loan is purchased from another holder. She further testified that the plaintiff relied on that type of document in purchasing a loan, that the plaintiff utilized such a document in the ordinary course of its business and that the document was utilized in creating the plaintiff's own business records.

Upon voir dire by the defendants' counsel, Anderson testified that she had no personal knowledge about the circumstances surrounding the creation of the document, that she had no independent information as to when the document was created other than the date on the document itself and that she initially was not involved in setting up the defendants' loan on the plaintiff's records. The defendants objected to the document's admission at that point, claiming that the plaintiff failed to establish that exhibit twelve was a business record of First Union. Relying on *Crest Plumbing & Heating Co.* v. *DiLoreto*, 12 Conn. App. 468, 531 A.2d 177 (1987), the court admitted exhibit twelve as a business record.

In *Crest Plumbing & Heating Co.*, this court determined that the trial court improperly refused to admit into evidence the periodic progress reports of the con-

struction mortgagee's engineer that had been sent to the mortgagee bank and kept as bank records. Id., 476. The trial court had concluded that the reports were inadmissible under § 52-180 because they were not the business records of the bank, but were business records of another entity. Id. The bank, through the testimony of one of its officers, established that the bank kept a record of those reports in its general course of business. Id., 473. This court concluded that "[t]here is no requirement in § 52-180 . . . that the documents must be prepared by the organization itself to be admissible as that organization's business records. All that is required is that it be in the regular course of the business to make the 'writing or record.' We believe the keeping of a report in a bank's file that serves as a basis of whether the bank will pay out money under a loan agreement satisfies the statutory requirement of 'record' and that such a record could reasonably be found to have been made in the course of the bank's business." Id., 475–76.

In the present case, there was testimony that the plaintiff utilized the information in the master record in creating its own computer records on the defendants' loan and that the creation of a document such as exhibit twelve is typical in a transaction involving the purchasing of loans from another holder. The plaintiff met the threshold for admissibility of exhibit twelve, keeping in mind that the requirements of § 52-180 are to be construed liberally. *State* v. *Huckabee,* supra, 54 Conn. App. 761–62. Although the statute allowed the document to be admitted, it was still within the province of the court to accept or to reject the information contained therein. On the basis of the testimony elicited by the defendants' counsel during voir dire and cross-examination of the qualifying witness, the court could determine what weight the evidence should be given.

See *Crest Plumbing & Heating Co.* v. *DiLoreto*, supra, 12 Conn. App. 476.

Additionally, it appears that the information as to the balance of the defendants' loan set forth in exhibit twelve is also contained in exhibit seven. "Even when a trial court's evidentiary ruling is deemed to be improper, we must determine whether that ruling was so harmful as to require a new trial. . . . In other words, an evidentiary ruling will result in a new trial only if the ruling was both wrong and harmful." (Internal quotation marks omitted.) *Madsen* v. *Gates*, 85 Conn. App. 383, 399, 857 A.2d 412, cert. denied, 272 Conn. 902, 863 A.2d 695 (2004). Given our determination that the court properly admitted exhibit seven, the admission of exhibit twelve, even if determined to be improper, would not have been harmful.

The judgment is affirmed and the case is remanded for the purpose of setting new law days.

In this opinion the other judges concurred.