******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MIDLAND FUNDING, LLC *v.* ANTELL
MITCHELL-JAMES
(AC 37697)

DiPentima, C. J., and Beach and Sheldon, Js.

*Submitted on briefs October 9, 2015—officially released March 15, 2016*

(Appeal from Superior Court, judicial district of
Fairfield, Radcliffe, J.)

*Antell Mitchell-James,* self-represented, the appellant
(defendant), filed a brief.

*Jeanine M. Dumont* filed a brief for the appellee
(plaintiff).

*Opinion*

DiPENTIMA, C. J. The self-represented defendant, Antell Mitchell-James, appeals from the summary judgment rendered in favor of the plaintiff, Midland Funding, LLC. On appeal, the defendant claims that the trial court improperly concluded that there was no genuine issue of material fact regarding the plaintiff's ownership of the debt that is the subject of the complaint.[1] We agree and, accordingly, reverse the judgment of the trial court.

The record reveals the following relevant facts and procedural history. On December 10, 2013, the plaintiff commenced this action, alleging in a two count complaint that the defendant (1) defaulted on her credit card account and became indebted to Chase Bank USA, N.A. (Chase), in the sum of $24,086.46, and (2) was liable for the account stated. The plaintiff also alleged that it had "purchased title to this debt on [June 30, 2011] for valuable consideration and as such is the bona fide owner of the debt." The defendant responded by filing a motion to dismiss, which was denied, followed by a motion to strike both counts, which also was denied.

In March, 2014, the plaintiff served the defendant with requests for admission. The defendant responded to the plaintiff's requests for admission in June, 2014, admitting, in relevant part, to using and making payments on an unspecified Chase credit card account. She did not, however, admit to any information specific to the account in question. Ultimately, on August 4, 2014, the defendant answered the complaint, alleging that she was "without knowledge or information sufficient to form a belief as to the truth of the allegations . . . ."

On December 1, 2014, the plaintiff filed a motion for summary judgment as to liability and damages. The plaintiff appended to the motion the sworn affidavit of a "legal specialist," Tamra Stayton, who was employed by another business, Midland Credit Management, Inc., that purportedly was the "servicer of [the defendant's] account on behalf of [the plaintiff]." Stayton averred that the defendant had defaulted on the subject credit card account and that the plaintiff was the current owner of the debt, entitling it to collect the $24,086.46 owed on the account. Accompanying Stayton's affidavit were eighteen copies of monthly credit card statements of the subject account for the period of April, 2008 through October, 2009, a "field data sheet" with information relating to the defendant's alleged debt, e.g., her name and amount owed, and a bill of sale that documented the alleged sale of unpaid credit card accounts from Chase to the plaintiff.

The defendant filed an opposition to the plaintiff's motion for summary judgment, arguing that genuine issues of material fact existed. The defendant claimed,

inter alia, that the affidavit supporting the plaintiff's motion contained hearsay that did not fall within the business records exception to the rule against hearsay pursuant to General Statutes § 52-180. The defendant also argued that the plaintiff, without "establish[ing] that it [was] the bona fide owner of the account in question," could not "step into the shoes of the original creditor, Chase . . . ." (Internal quotation marks omitted.) Of note, appended to the defendant's memorandum of law was a letter that purportedly was sent to her by Midland Credit Management, Inc., notifying her that the plaintiff had purchased her Chase account and that she owed $24,112.85 to the plaintiff.

The plaintiff replied with a supplemental memorandum of law in support of its motion for summary judgment. Although largely repetitive of its original memorandum of law, the plaintiff addressed the defendant's claim that the affidavit contained inadmissible hearsay. Citing to case law and our rules of practice, the plaintiff argued that the submitted affidavit fell within the ambit of the business records exception to the hearsay rule. With the supplemental memorandum of law, the plaintiff also submitted an affidavit from Martin Lavergne, an officer of JPMorgan Chase Bank, N.A., who averred that he was authorized by Chase to submit the affidavit. Lavergne further averred that Chase sold a "pool of charged-off accounts" to the plaintiff, and, as part of the sale, "electronic records and other records on individual accounts included in the [pool of charged-off accounts] were transferred to [the plaintiff]." Lavergne affirmed that he was "aware of the process of the sale and assignment of electronically stored business records," and averred, without elaborating as to the basis for his averment, that he was "not aware of any errors in the [pool of charged-off accounts]."

After a hearing on January 26, 2015, the court granted the plaintiff's motion for summary judgment, finding "a proper account stated of $24,086.46." This appeal followed.

On appeal, the defendant claims that the court improperly granted the plaintiff's motion for summary judgment. Specifically, the defendant argues that Stayton's affidavit failed to provide the "evidentiary foundation for the documents submitted [by the plaintiff] as business records." Consequently, the defendant argues, the plaintiff "never established that it was the successor in interest to the account in question";[2] thus, the court erred in rendering summary judgment because a genuine issue of material fact existed as to whether the plaintiff owned the defendant's charged-off account. We agree.

As a preliminary matter, we set forth the standard of review. The parties agree that plenary review is the appropriate standard. Generally, "[o]ur review of the

trial court's decision to grant the . . . motion for summary judgment is plenary. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct . . . ." (Internal quotation marks omitted.) *American Express Centurion Bank* v. *Head*, 115 Conn. App. 10, 15, 971 A.2d 90 (2009). When presented with an evidentiary issue, as in this case, our standard of review "depends on the specific nature of the claim presented." *State* v. *Smith*, 289 Conn. 598, 617, 960 A.2d 993 (2008). Thus, "[t]o the extent a trial court's admission of evidence is based on an interpretation of [law], our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review." (Internal quotation marks omitted.) Id.

A trial court's decision to admit evidence, *if premised on a correct view of the law*, however, calls for the abuse of discretion standard of review. Id.; see also *Nash* v. *Stevens*, 144 Conn. App. 1, 15–16, 71 A.3d 635 (applying abuse of discretion standard in reviewing evidentiary issue in appeal from grant of summary judgment), cert. denied, 310 Conn. 915, 76 A.3d 628 (2013); *Bruno* v. *Geller*, 136 Conn. App. 707, 716, 46 A.3d 974 (same), cert. denied, 306 Conn. 905, 52 A.3d 732 (2012). "In other words, only after a trial court has made the legal determination that a particular statement is or is not hearsay, or is subject to a hearsay exception, is it vested with the discretion to admit or to bar the evidence based upon relevancy, prejudice, or other legally appropriate grounds related to the rule of evidence under which admission is being sought. . . . A paradigmatic example of this distinction would be a trial court's conclusion that a hearsay statement bears the requisite indicia of trustworthiness and reliability necessary for admission under the residual exception to the hearsay rule, which would be reviewed for an abuse of discretion. . . . By contrast, the question of whether the trial court properly could have admitted that statement under the residual exception if the admission of that type of statement expressly was barred under another hearsay exception would present a question of law over which the appellate courts exercise plenary review." (Internal quotation marks omitted.) *State* v. *Smith*, supra, 289 Conn. 617–18.

Unfortunately, here, we have no memorandum of decision from the court to help us determine the precise basis of the court's decision to grant the motion for summary judgment. Nevertheless, we may infer that for the court to have rendered summary judgment, it must have concluded that the hearsay contained in the plaintiff's affidavit supporting its motion fell within the business records exception to the rule against hearsay. Therefore, whether the court applied the correct legal test to admit computer generated business records

under a hearsay exception is a "legal [question] demanding plenary review." (Internal quotation marks omitted.) Id., 617.

A party seeking summary judgment has the considerable burden of demonstrating the absence of any genuine issue of material fact because "litigants ordinarily have a constitutional right to have issues of fact decided by a [trier of fact] . . . ." (Citation omitted.) *Town Bank & Trust Co.* v. *Benson,* 176 Conn. 304, 307, 407 A.2d 971 (1978). Thus, "[i]n seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue." (Emphasis omitted; internal quotation marks omitted.) *American Express Centurion Bank* v. *Head,* supra, 115 Conn. App. 14–15; see also Practice Book § 17-49.

Only evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment. See *Great Country Bank* v. *Pastore,* 241 Conn. 423, 436, 696 A.2d 1254 (1997). Practice Book § 17-46 provides in relevant part that "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . ." See, e.g., *12 Havemeyer Place Co., LLC* v. *Gordon,* 93 Conn. App. 140, 157, 888 A.2d 141 (2006) (explaining that "affidavit [that] does not contain admissible evidence as required by our rules of practice . . . is therefore insufficient to oppose a motion for summary judgment"). Moreover, affidavits must be accompanied by "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit . . . ." Practice Book § 17-46.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. See *Connecticut Bank & Trust Co.* v. *Reckert,* 33 Conn. App. 702, 708, 638 A.2d 44 (1994). "Unless subject to an exception, hearsay is inadmissible." Id. If the proffered evidence consists of business records, the court must determine whether the documents satisfy the " 'modest require-

ments' " under § 52-180[3] to admit them under the business records exception to the hearsay rule. *Federal Deposit Ins. Corp.* v. *Carabetta*, 55 Conn. App. 369, 374, 739 A.2d 301, cert. denied, 251 Conn. 927, 742 A.2d 362 (1999). When the proffered business records are computer generated, however, the proffering party must satisfy a two part test.

First, the proponent must satisfy the statutory requirements of the business records exception to the hearsay rule. See id., 376. "To admit evidence under the business record exception to the hearsay rule, a trial court judge must find that the record satisfies each of the three conditions set forth in General Statutes § 52-180. The court must determine, before concluding that it is admissible, that the record was made in the regular course of business, that it was in the regular course of such business to make such a record, and that it was made at the time of the act described in the report, or within a reasonable time thereafter. . . . To qualify a document as a business record, the party offering the evidence must present a witness who testifies that these three requirements have been met." (Internal quotation marks omitted.) *Emigrant Mortgage Co.* v. *D'Agostino*, 94 Conn. App. 793, 807, 896 A.2d 814, cert. denied, 278 Conn. 919, 901 A.2d 43 (2006); see also Conn. Code Evid. § 8-4 (a).

Second, the proponent of the computer generated business records "must establish that the basic elements of the computer system are reliable." *Federal Deposit Ins. Corp.* v. *Carabetta*, supra, 55 Conn. App. 376. The genesis of the second part of the test dates back to *American Oil Co.* v. *Valenti*, 179 Conn. 349, 358–59, 426 A.2d 305 (1979), in which our Supreme Court noted that "[b]usiness records that are generated by computers present structural questions of reliability that transcend the reliability of the underlying information that is entered into the computer. Computer machinery may make errors because of malfunctioning of the hardware, the computer's mechanical apparatus. Computers may also, and more frequently, make errors that arise out of defects in the software, the input procedures, the data base, and the processing program. . . . In view of the complex nature of the operation of computers and general lay unfamiliarity with their operation, courts have been cautioned to take special care to be certain that the foundation is sufficient to warrant a finding of trustworthiness and that the opposing party has full opportunity to inquire into the process by which information is fed into the computer." (Citations omitted; internal quotation marks omitted.)

Satisfying this additional layer of scrutiny of computer generated business records is essential but not onerous. "[I]t is not necessary to produce as a witness the keypunch operator who actually entered information into the computer or the programmer who designed

the processing program. . . . While a witness from the computer department may well be the optimal proponent of such evidence, such a person may not always be available to testify. What is crucial is not the witness' job description but rather his knowledgeability about the basic elements that afford reliability to computer print-outs. . . . The witness must be a person who is familiar with computerized records not only as a user but also as someone with some working acquaintance with the methods by which such records are made." (Citation omitted.) Id., 360–61.[4]

With these principles in mind, we turn to the dispositive issue of whether evidence submitted by the plaintiff eliminated any issue of fact as to the ownership of the defendant's debt. We conclude that the plaintiff's evidence did not establish it as the owner of the debt and, therefore, the court improperly rendered summary judgment.

On the basis of the record, the plaintiff attempted to establish ownership of the defendant's debt through four documents. The first and most important document to the plaintiff's motion was Stayton's affidavit averring that the plaintiff owned the defendant's debt. As proof of this ownership and to satisfy the requirements of Practice Book § 17-46, the plaintiff submitted the second and third documents, i.e., the bill of sale and Lavergne's affidavit.[5] As to the debt in question, Stayton's affidavit averred that the defendant opened a credit card account with Chase on April 25, 2002, that the last payment of $50 on this account was made on June 7, 2009, and that the account was charged-off on October 30, 2009. Stayton's affidavit also averred that the amount of the defendant's debt was $24,086.46. To support these claims, the plaintiff submitted a fourth document, the "field data sheet."[6] Despite these four documents, the plaintiff failed to demonstrate that there was no genuine issue of material fact as to the ownership of the defendant's debt because Stayton's affidavit did not establish that the plaintiff's computer system that generated the business records was reliable.

Although Stayton's affidavit averred that her statements were "based upon personal knowledge of those account records maintained on [the] plaintiff's behalf," asserted that she was "familiar with and trained on the manner and method by which [Midland Credit Management, Inc.] create[d] and maintain[ed] its business records pertaining to this account," and recited the statutory requirements of § 52-180,[7] the affidavit did not "establish that the basic elements of the computer system [were] reliable." *Federal Deposit Ins. Corp.* v. *Carabetta*, supra, 55 Conn. App. 376. Heeding our Supreme Court's caveat that "[c]omputers may . . . make errors that arise out of defects in the 'software,' the input procedures, the data base, and the processing program"; *American Oil Co.* v. *Valenti*, supra, 179 Conn.

359; we conclude that it was incumbent on the plaintiff to produce an affidavit from "a person who is familiar with computerized records not only as a user but also as someone with some working acquaintance with the methods by which such records are made"; id., 361; to establish the reliability of the plaintiff's computer system.[8]

We conclude that Stayton's affidavit did not satisfy the second part of the two part test as presented in *Federal Deposit Ins. Corp.* v. *Carabetta*, supra, 55 Conn. App. 376. Unlike the testimony of the witness in *First Union National Bank* v. *Woermer*, 92 Conn. App. 696, 887 A.2d 893 (2005), cert. denied, 277 Conn. 914, 895 A.2d 788 (2006), whom the trial court had determined was qualified to authenticate the document at issue; see footnote 4 of this opinion; Stayton's affidavit did not suggest that she understood how Chase transmitted the "electronically stored business records" to the plaintiff or how the plaintiff processed the electronic records to create computer generated business records that somehow resided with her employer, Midland Credit Management, Inc. In short, Stayton's affidavit did not establish that the plaintiff's computer systems were reliable. Accordingly, the plaintiff failed to meet the court's "strict standard" of "showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact"; (internal quotation marks omitted) *American Express Centurion Bank* v. *Head*, supra, 115 Conn. App. 15; as to whether the plaintiff not only owned a "pool of charged-off accounts," but also owned the defendant's debt. Thus, Stayton's affidavit was not sufficient to admit the attached computer generated documents under the business records exception to the hearsay rule. Without that evidence, the plaintiff failed to sustain its burden of establishing that it owned the defendant's debt. Because of this failure, we conclude that the plaintiff failed to establish that there was no genuine issue of material fact as to its ownership of the defendant's alleged debt.

Finally, "[w]e do not suggest that defendants who default on their credit card payments can defeat a summary judgment motion simply by denying that [the creditor does not own the debt]. We merely conclude that the plaintiff creditor needs to substantiate its claims with sufficient evidence at the summary judgment stage. Having failed to negate the existence of a genuine issue of material fact, the plaintiff did not meet its burden of establishing that as a matter of law, summary judgment should have been rendered in its favor." *American Express Centurion Bank* v. *Head*, supra, 115 Conn. App. 17–18. Here, the plaintiff failed to meet its burden of establishing the absence of a genuine issue of material fact as to the factual basis for its claim of ownership of the defendant's alleged debt. Thus, the court erred in concluding that the plaintiff was entitled

to judgment against the defendant as a matter of law. Accordingly, we reverse the judgment of the trial court.

The judgment is reversed and the case is remanded with direction to deny the plaintiff's motion for summary judgment and for further proceedings according to law.

In this opinion the other judges concurred.

[1] The defendant also raised additional issues on appeal, namely, that the plaintiff violated her privacy rights, lacked standing, violated federal and state law, and that the court denied her "equal and just treatment" in violation of the fifth and fourteenth amendments to the federal constitution. Although we are solicitous of the rights of self-represented litigants; see *Cragg* v. *Administrator, Unemployment Compensation Act*, 160 Conn. App. 430, 443 n.9, 125 A.3d 650 (2015); this court is "not required to review claims that are inadequately briefed." (Internal quotation marks omitted.) *Paoletta* v. *Anchor Reef Club at Branford, LLC*, 123 Conn. App. 402, 406, 1 A.3d 1238, cert. denied, 298 Conn. 931, 5 A.3d 491 (2010).

[2] At the January, 2015 hearing, the defendant succinctly argued to the court that the issue was not "whether [she] had an account with Chase or not . . . [the] issue [was] . . . whether [the plaintiff had] the right to collect on this account."

[3] General Statutes § 52-180 provides in relevant part: "(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter.

"(b) The writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such persons are unavailable as witnesses. Either of such facts and all other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of the evidence, but not to affect its admissibility. . . ."

[4] Our analysis in *First Union National Bank* v. *Woermer*, 92 Conn. App. 696, 887 A.2d 893 (2005), cert. denied, 277 Conn. 914, 895 A.2d 788 (2006), illustrates how a party offering computer generated business records satisfied the two part test. This case was a foreclosure action in which "Centerbank merged with and into First Union Bank of Connecticut. First Union Bank of Connecticut then merged with and became First Union National Bank (First Union), which . . . [ultimately] assigned all loan documents on the defendants' loan to the [substitute] plaintiff, [EMC Mortgage Corporation], as part of a bulk sale of loans . . . ." Id., 698.

On appeal, the defendants claimed, inter alia, that the "court improperly admitted exhibit seven into evidence because the plaintiff failed to authenticate that document as a record of Centerbank or First Union." Id., 706. Exhibit seven was the "defendants' mortgage history from Centerbank generated by the [payment processing] computer system, which [was] the system used by Centerbank and First Union when Centerbank merged into First Union." Id., 706. The plaintiff presented testimony from a "former employee of Centerbank and First Union." Id., 706–707. The witness not only testified to the statutory requirements of § 52-180, but also stated that "she personally utilized the computer system that generated the document to obtain information relating to loans owned or serviced by Centerbank, that it was the same computer system utilized by First Union after the merger and that the bank computer system was reliable." Id., 707. Although the witness conceded that she had not prepared the report or "had [any] responsibility in connection with the defendants' loan"; id.; this court on review held that the witness was qualified to authenticate exhibit seven because she was "very familiar with the records and the [payment processing] computer system used by Centerbank and First Union, because she had been an employee of both institutions for several years and had worked extensively with the computer system." Id., 709.

[5] The bill of sale bears the logo of "CHASE" and purports to document a sale of charged-off accounts between Chase, as the seller, and the plaintiff,

as the purchaser, with a closing date of June 30, 2011. According to this document, Chase "assign[ed] . . . all rights, title and interest of [Chase] in and to those certain receivables, judgments or evidences of debt described in the Final Data File, entitled (Account's Primary File Name) attached hereto and made part hereof for all purposes." The document goes on to state that "[w]ith respect to account information for the Accounts listed in the Final Data File, [Chase] represents and warrants to [the plaintiff] that . . . the . . . information is complete and accurate . . . ." Tellingly, the bill of sale makes no specific reference to the defendant's account. Nonetheless, because it was never explicitly stated by Stayton or briefed by the plaintiff, it can be inferred that the "Final Data File" purportedly contained the defendant's account information that somehow was electronically transferred to the plaintiff but ultimately resided with Midland Credit Management, Inc.

In an apparent effort to buttress the information provided in the bill of sale, the plaintiff submitted Lavergne's affidavit with a supplemental memorandum of law in support of the motion for summary judgment. His affidavit claimed that he was aware that Chase sold and assigned "electronically stored business records" by selling a "pool of charged-off accounts" to the plaintiff. Lavergne averred that "records on individual accounts in the [pool of charged-off accounts] were transferred to [the plaintiff]." Like the bill of sale, Lavergne's affidavit made no specific reference to the defendant's account, which leads us to infer that the plaintiff submitted this affidavit to suggest that the defendant's account was sold as part of the "pool of charged-off accounts" that ultimately ended in the records of Midland Credit Management, Inc.

[6] The "field data sheet" contains a footnote stating that the data was "printed by Midland Credit Management, Inc. from electronic records provided by [Chase] pursuant to the Bill of Sale / Assignment of Accounts dated [June 30, 2011] . . . ."

[7] The record reveals that Stayton's assertions are questionable. One discrepancy is the last payment date. According to Stayton, the defendant submitted a final payment of $50 on June 7, 2009. The credit card account statement, however, covering the period from May 21, 2009 through June 20, 2009—that was provided by the plaintiff—shows the last payment date as June 8. Another problem not addressed by the plaintiff either in its motion for summary judgment or on appeal, is the debt amount. In her objection to the motion for summary judgment, the defendant submitted a letter dated June 8, 2011, that was purportedly sent by Midland Credit Management, Inc., indicating that the defendant's debt was in the amount of $24,112.85, which is slightly more than what Stayton's affidavit claimed. These potential discrepancies, if nothing else, indicate that the records of Midland Credit Management, Inc., may contain errors and illustrate the necessity for the two part test for computer generated business records.

[8] We note that the plaintiff's argument assumes that Stayton's affidavit and supporting documents met its burden on a motion for summary judgment. The plaintiff argues on appeal that because the "defendant failed to produce any evidence to controvert the plaintiff's motion or . . . [submit a counteraffidavit]," there was no genuine issue of material fact, thereby affording the court "little choice but to grant" its motion for summary judgment. To be sure, when the moving party seeking summary judgment meets its burden, "the opposing party must present evidence that demonstrates the existence of some disputed factual issue." (Internal quotation marks omitted.) *Marinos* v. *Poirot*, 308 Conn. 706, 712, 66 A.3d 860 (2013). However, "[w]hen documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, *the nonmoving party has no obligation to submit documents establishing the existence of such an issue.*" (Emphasis added; internal quotation marks omitted.) Id.